In re SPIRCO, INC., f/k/a
Nasco, Inc., Debtor.

SPIRCO, INC., f/k/a Nasco, Inc., Now, by
Merger Effected by Approved and Con-
firmed Plan of Reorganization, Known
As Innovo Group, Inc., Movant,

v.

Wayne COPELIN, an individual,
Respondent.

Bankruptcy No. 93–23033–BM.
Motion No. 96–2128M.

United States Bankruptcy Court,
W.D. Pennsylvania.

Oct. 18, 1996.

**746**

James R. Walsh, Spence, Custer, Saylor, Wolfe & Rose, Johnstown, PA, for Movant/Debtor.

Randall W. Moon, Davis Reilly, P.C., Pittsburgh, PA, for Respondent.

### *MEMORANDUM OPINION*

BERNARD MARKOVITZ, Chief Judge.

Debtor Spirco, Inc. has moved for an order enforcing the provision of its confirmed plan of reorganization which prohibits respondent Wayne Copelin from continuing his efforts in another forum to collect from Innovo Group, Inc. on a pre-petition debt owed by debtor and guaranteed by Innovo. It also requests that we hold Copelin in contempt of court and impose an appropriate sanction upon him.

Copelin steadfastly denies for a variety of reasons that we may or should grant the relief debtor has requested.

For reasons set forth below, we will enforce the injunction and prohibit Copelin from continuing his efforts against Innovo. The request to hold Copelin in contempt of court and to sanction him will be denied at this time.

### –FACTS–

In 1991, Innovo acquired the stock of Nasco, Inc., which subsequently changed its name to Spirco.

On January 2, 1992, Nasco agreed to employ Copelin as its president. The agreement provided, *inter alia,* that Copelin was entitled to the sum of $100,000.00 if his employment was terminated at any time during 1992. Copelin, debtor, and Innovo executed the agreement.

After debtor terminated his employment in May of 1992, Copelin brought suit on July 2, 1992, against debtor and Innovo in the Chancery Court of Springfield County, Tennessee. Copelin was represented in this action and in a subsequent removal proceeding in the bankruptcy court for the Middle District of Tennessee by James Chesser, Esquire.

On August 27, 1993, while the above lawsuit was pending, debtor filed a voluntary chapter 11 petition in this court. Copelin was listed on the schedules as having a disputed unsecured nonpriority claim. Notice of the bankruptcy filing was sent to:

Wayne Copelin

c/o James Chesser

House of Gold Building

1614 16th Street

Nashville, TN 37212

On October 22, 1993, Innovo filed an application for removal of the above state court action in the bankruptcy court for the Middle District of Tennessee. We have no basis for concluding that debtor was a party to those proceedings and have not been provided a rationale for the Tennessee court's decision. We do know that no party requested or was granted relief from the automatic stay, which prohibited any action having a negative effect on debtor or debtor's assets.

At the request of Copelin, the Chancery Court subsequently entered an order on October 26, 1993, dismissing without prejudice Copelin's action as to debtor.

On December 29, 1993, the bankruptcy court for the Middle District of Tennessee remanded the case to the Chancery Court after determining that the action against Innovo had no significant impact on the bankruptcy case before us and was not related to it. No party to the proceeding—i.e., Copelin or Innovo—appealed the order.

Debtor submitted an amended plan of reorganization of March 31, 1994.

Among other things, Article II of the amended plan set forth the various classes of claimants. Class 8 claimants consisted of parties having allowed unsecured nonpriority claims against debtor for which Innovo also was liable, by guaranty or otherwise, as established by entry of a final order upon motion by debtor, or the class 8 claimant, or by written acknowledgment of Innovo.

Article III of the amended plan provided that debtor would merge into Innovo and would cease to exist as of the effective date of the plan, Innovo in turn was to acquire debtor's liabilities only as provided for in the plan. Class 8 claimants would be paid in full with common stock issued by Innovo and had no further recourse against either debtor or Innovo.

An order confirming debtor's amended plan of reorganization was issued on August 5, 1994. Copelin neither objected to the plan nor appealed the order confirming it.

On September 22, 1994, debtor brought a post-confirmation motion to classify claims wherein it sought a determination that if Innovo was found liable for any of debtor's obligations to a claimant by final order issued in any then-pending state court action, the claim would be treated as a class 8 claim. Copelin was named as a respondent but did not respond.

Service of the motion and the order scheduling a hearing on it were made upon James Chesser, Copelin's counsel in the action in the Chancery Court and in the removal proceeding in the bankruptcy court for the Middle District of Tennessee. Chesser did not, however, enter his appearance on behalf of Copelin in this bankruptcy case. Notice was sent by prepaid first class mail to Chesser as debtor's agent on September 29, 1994, and again on October 4, 1994, when debtor learned that Chesser had a new business address.

Debtor's motion to classify class 8 claims was granted after a hearing on November 8, 1994. Copelin neither objected to the motion nor appealed the order granting the motion.

The litigation concerning the above employment contract went forward as to Innovo in the Chancery Court. On April 4, 1995, the Chancery Court granted summary judgment in favor of Copelin and against Innovo in the amount of $100,000. Innovo did not appeal the order.

Pursuant to the order of November 8, 1994, the requisite shares of Innovo's common stock were forwarded to Copelin by the stock trustee. Copelin refused to accept the shares as payment for the debt owed to him jointly by debtor and Innovo.

On June 20, 1996, Copelin served post-judgment interrogatories on Innovo's counsel to discover assets of Innovo against which Copelin might execute.

Debtor brought the present motion on July 13, 1996, seeking to enforce the discharge injunction and the terms of the confirmed plan of reorganization, to hold Copelin in contempt of court, and to impose sanctions upon him. A hearing on the motion and Copelin's opposition thereto was conducted on September 5, 1996. Subsequent to the hearing, the parties submitted briefs in support of their respective positions.

–DISCUSSION–

### I. Debtor's Request To Enforce Injunction Against Copelin.

With certain exceptions not here relevant, debtor and its creditors are bound by the provisions of a confirmed plan of reorganization, irrespective of whether the creditor's claim is impaired under the plan or the creditor has accepted the plan. 11 U.S.C. § 1141(a). Confirmation of the plan discharges the debtor from any pre-petition debt, whether or not a proof of claim based on the debt was filed or the claim holder accepted the plan. 11 U.S.C. § 1141(d)(1). A discharge serves to enjoin commencement or continuation of an action to collect or to recover such debt as a personal liability of the debtor. 11 U.S.C. § 524(a)(2).

Copelin has raised various objections and defenses to debtor's motion to enjoin him from continuing his action against Innovo in the Chancery Court. He asserts that: (1) we lack subject-matter jurisdiction to hear

debtor's motion; (2) we lack authority to enter a final order so enjoining Copelin because the matter is not "core"; (3) Innovo's debt to Copelin was not discharged; (4) the order whereby Copelin became a class 8 claimant is not binding upon him; (5) the injunction debtor seeks to enforce violates 11 U.S.C. § 524(e); (6) debtor is barred from bringing this motion by *res judicata* and/or collateral estoppel. We shall address these contentions in order.

### A.) Do We Have Jurisdiction To Hear This Matter?

■ Pending referral from the district court, a bankruptcy court has subject-matter jurisdiction over four types of title 11 matters: (1) cases under title 11; (2) proceedings arising under title 11; (3) proceedings arising in a case under title 11; and (4) proceedings related to a case under title 11. *In re Marcus Hook Development Park, Inc.,* 943 F.2d 261, 264 (3d Cir.1991). Our jurisdiction is original and exclusive with respect to the first category and is original but not exclusive with respect to the remaining three. *See* 28 U.S.C. § 1334(a), (b).

The first category "refers merely to the bankruptcy petition itself". *Marcus Hook,* 943 F.2d at 264 (*quoting Matter of Wood,* 825 F.2d 90, 92 (5th Cir.1987)).

The second category refers to proceedings that are created or determined by a statutory provision of the Bankruptcy Code itself. *In re Wolverine Radio,* 930 F.2d 1132, 1144 (6th Cir.1991), *cert. dismissed,* 503 U.S. 978, 112 S.Ct. 1605, 118 L.Ed.2d 317 (1992).

The third category pertains to proceedings which, by their very nature, could arise only in the context of a bankruptcy case. *Id.*

The final category consists of proceedings whose outcome "could conceivably have an effect on the estate being administered in bankruptcy". *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984). The scope of this final category has "some breadth". *Celotex Corp. v. Edwards,* — U.S. —, ——

——, 115 S.Ct. 1493, 1498–99, 131 L.Ed.2d 403 (1995). Conceivability is the key concept with respect to this category. Neither certainty nor likelihood is required. *Id.* Bankruptcy jurisdiction exists pursuant to this category:

> ... so long as it is possible that a proceeding may impact on "the debtor's rights, liabilities, options, or freedom of action" or "the handling and administration of the bankruptcy estate". *In re Smith,* 866 F.2d 576, 580 (3d Cir.1989); *Accord Pacor, Inc. v. Higgins,* 743 F.2d at 994.

*Marcus Hook,* 943 F.2d at 264.

It is not necessary when determining whether a given matter lies within the bankruptcy court's original but not exclusive jurisdiction to distinguish among the latter three categories. They "operate conjunctively" in defining the scope of this jurisdiction. We need only determine whether the matter is "related to" the bankruptcy case. *Marcus Hook,* 943 F.2d at 264.

The first of the above categories unquestionably is not present in this instance. Debtor's motion goes beyond the filing of a bankruptcy petition. *Wolverine Radio,* 930 F.2d at 1140.

We have original but not exclusive jurisdiction over debtor's motion because it falls into the second and third of the above categories. Debtor seeks to enforce the injunction arising pursuant to 11 U.S.C. § 524(a)(2). Such a request would arise only in the context of a bankruptcy case wherein a plan of reorganization was confirmed and debtor had received a discharge.

The matter does not end there. Even if the matter does not arise in a case under title 11, at the very least it falls into the fourth of the above categories in that the matter is "related to" a case under title 11.[1] The confirmed plan of reorganization provides that all class 8 claimants will be paid in full in stock of Innovo and will have no further recourse against either debtor or Innovo. Allowing Copelin to continue with his execution proceeding against Innovo in the

---

1. The fact that this dispute involves parties other than the debtor is not an obstacle to jurisdiction existing under this category. Suits between third parties which affect the bankruptcy estate may qualify as "related to" proceedings. *See Celotex,* — U.S. at —— —— n. 5, 115 S.Ct. at 1498–99 n. 5.

Chancery Court clearly would adversely affect implementation of this plan provision.

## B.) Is This Matter "Core"?

■ The question whether a given proceeding is core or not is wholly separate from the question of subject-matter jurisdiction. A bankruptcy court may have jurisdiction to hear a matter but lack authority to enter a final judgment or order. *Marcus Hook,* 943 F.2d at 266.

Section 157 of the Judicial Code differentiates between two levels of bankruptcy court authority in this regard, depending on the type of proceeding. If it is "core", the bankruptcy court is empowered to hear and determine issues and to enter appropriate orders and judgments subject to traditional appellate review. 28 U.S.C. § 157(b)(1). If, however, the proceeding is not "core", it does not have authority to enter such orders and judgments. Unless the district court and the parties otherwise agree, the district court shall enter final orders and judgments after reviewing *de novo* the findings of fact and conclusions of law submitted to it by the bankruptcy court. 28 U.S.C. § 157(c).

Section 157(b)(2) provides a non-exhaustive list of examples of proceedings that are "core". Although the statute itself does not define "core", the United States Court of Appeals for the Third Circuit has articulated the following standard. A proceeding is "core":

> . . . if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its very nature, could arise only in the context of a bankruptcy case.

*Beard v. Braunstein,* 914 F.2d 434, 444 (3d Cir.1990).

Copelin's contention that this is not a core matter is incorrect. As we indicated previously, the issues raised by their very nature could arise only in the context of a bankruptcy case. Debtor requests enforcement of the

injunction arising from plan confirmation against efforts by a pre-petition creditor to collect a debt owed to that creditor by debtor and a third party. Accordingly, we have authority to decide the matter by entering a final order and will do so.[2]

## C.) Was The Debt Owed To Copelin Discharged?

The debt owed to Copelin by debtor was scheduled as a nonpriority unsecured and *disputed* debt. Copelin appears to argue that the debt in question was not discharged because he did not file a proof of claim. This argument is without any merit and may be given short shrift.

■ Because Copelin's unsecured claim was scheduled as disputed, he was required to file a proof of claim if he wished to vote on the proposed plan of reorganization and to participate in distribution. *See* Federal Rule of Bankruptcy Procedure 3003(c)(2). It does not follow from this, however, that Copelin's failure to file a proof of claim enabled him to avoid having the debt owed to him discharged. With certain exceptions that are not here relevant, the Bankruptcy Code provides that a debt is discharged irrespective of whether a proof of claim based on that debt is filed or deemed to be filed. See 11 U.S.C. § 1141(d)(1)(A)(I).[3]

## D.) Is Copelin A Class 8 Claimant?

■ Class 8 claimants were paid in full in Innovo stock in accordance with the provisions of debtor's confirmed plan of reorganization and were precluded from having further recourse against either debtor or Innovo. Perhaps because he realizes that the last argument is unavailing, Copelin next denies that he is a class 8 claimant and therefore is not precluded from proceeding against Innovo in the Chancery Court.

---

2. If, as Copelin insists, this matter is not "core", the findings of fact and conclusions of law set forth in this memorandum opinion shall constitute recommendations subject to *de novo* review by the district court.

3. Copelin does not assert that he was not notified of debtor's bankruptcy filing or that he wished to file a proof of claim but for some reason was unable for some reason to do so. To the contrary, it appears that Copelin deliberately chose to forego filing a proof of claim in this case and elected instead to recover from Innovo alone.

If he is bound by it, Copelin qualifies as a class 8 claimant by virtue of the unappealed order of November 8, 1994, which determined that a claim is a class 8 claim if Innovo is liable for any of debtor's obligations to a claimant by virtue of a final order or judgment in any pending state court action. Copelin maintains that he is not bound by this order because he was not effectively served with debtor's motion to classify claims or the order scheduling the matter for hearing.

Federal Rule of Bankruptcy Procedure 7004, which applies to motions in contested matters by virtue of Federal Rule of Bankruptcy Procedure 9014, provides in pertinent part as follows:

**(b) SERVICE BY FIRST CLASS MAIL.**
. . . service may be made within the United States by first class mail postage prepaid as follows:

(1) upon an individual other than an infant or incompetent, by mailing a copy of the summons and complaint to the individual's dwelling house or usual place of business or the place where the individual regularly conducts a business or profession. . . .

(8) upon any defendant, it also is sufficient if a copy of the summons and complaint is mailed to an agent of such defendant authorized by appointment or by law to receive service of process, at the agent's dwelling house or usual place of abode or at the place where the agent regularly carries on a business or profession. . . .

It is undisputed that debtor's motion to classify class 8 claimants and the order scheduling a hearing on the matter were not served upon Copelin in accordance with Rule 7004(b)(1). Service upon Copelin himself was not attempted. It instead was made upon James Chesser at the place where he regularly carries on his profession as a lawyer.

On September 28, 1994, debtor's counsel sent by prepaid first class mail a copy of the motion to classify claims and scheduling order to:

Wayne Copelin
c/o James Chesser
House of Gold Building

1614 16th Ave., South
Nashville, TN 37212

Because he apparently had changed the address of his law practice, the pleadings mailed to Chesser were returned to debtor's counsel with the notation that the forwarding address had expired. Upon learning of Chesser's new address, debtor's counsel sent by prepaid first class mail another copy of the motion and scheduling order to:

Wayne Copelin
c/o James Chesser, Esq.
1710 Grand Avenue
Nashville, TN 37212

Copelin does not deny that Chesser received this second mailing sent to Chesser's new address.

As was noted previously, Chesser was Copelin's attorney in the action Copelin brought against debtor and Innovo in the Chancery Court and in connection with the removal petition Innovo brought in the bankruptcy court for the Middle District of Tennessee. For obvious tactical reasons, Copelin determined not to retain Chesser to represent him in this bankruptcy case and accordingly Chesser did not enter his appearance in this case.

Copelin would have us infer from the above that Chesser was not an agent authorized either by appointment or by law to receive service on Copelin's behalf and that he—i.e., Copelin—therefore was not served with debtor's motion and the scheduling order in accordance with the requirements of Rule 7004(b)(8). This inference is unwarranted. Based on the facts presented and the applicable law, we conclude that service upon Copelin was effected pursuant to Rule 7004(b)(8).

The ultimate issue that we must resolve is whether Chesser was authorized to receive and accept, as Copelin's agent, service of the above motion and scheduling order. Effective service was made upon Copelin in this instance if and only if Chesser was so authorized.

■ As a general matter, an attorney does not become an agent authorized in every instance to receive service of process on

behalf of an individual whom they represent. *See United States v. Bosurgi*, 343 F.Supp. 815, 817 (S.D.N.Y.1972). Representation of a client in *un* related litigation does not suffice to make the attorney an agent authorized to accept service on behalf of a client in another case. *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir.1985). Service on the attorney is effective as to the client only if the attorney is expressly or impliedly authorized to accept service for the client. *Bosurgi*, 343 F.Supp. at 817; *United States v. Marple Community Record, Inc.*, 335 F.Supp. 95, 101 (E.D.Pa. 1971).

Copelin's present counsel avers that he did not expressly authorize Chesser to accept service on Copelin's behalf in this bankruptcy case. If Chesser was so authorized, it was by implication.

The facts and circumstances surrounding Chesser's representation of Copelin in related litigation compels the conclusion that Chesser was authorized to accept service of the above motion and scheduling order on behalf of Copelin and that service upon Copelin therefore was effected pursuant to Rule 7004(b)(8). The relief debtor sought in its motion had a direct and highly significant effect on the judgment of the Chancery Court in favor of Copelin and against Innovo. The debt of Innovo would be fully satisfied upon receipt of Innovo stock and Copelin would have no further recourse against Innovo if debtor's motion was granted. The nexus between this motion and the litigation in the Chancery Court is sufficiently proximate to justify the inference that Chesser was authorized by implication to accept service of the motion and scheduling order on behalf of Copelin.

■ Copelin was not deprived of due process and is bound by the order of November 8, 1994, whereby he became a class 8 claimant. The service made upon Chesser was "reasonably calculated" to insure that Copelin was afforded an opportunity to protect and defend his legal rights. *See Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940). We believe he knew of this proceeding and made a tactical decision to pursue his legal position in a different manner.

We believe his tactical decision and legal position were incorrect.

## E.) Does The Contested Plan Provision Violate 11 U.S.C. § 524(e)?

■ Section 524 of the Bankruptcy Code provides in pertinent part that:

(e) ... discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

11 U.S.C. § 524.

Copelin is probably correct in maintaining that the contested provision of the confirmed plan of reorganization, which provides that class 8 claimants shall be paid in full in Innovo stock and that they will have no further recourse against either debtor or Innovo, violates this provision of the Bankruptcy Code.

This acknowledgment does not, however, dispose of debtor's motion. The issue that must be addressed is whether this provision of the confirmed plan consequently is unenforceable in this instance. According to Copelin, it follows from this unassailable proposition that the provision is not enforceable and that he therefore is not precluded from proceeding against Innovo in the Chancery Court to recover on his judgment.

As support for his position, Copelin relies upon *Matter of Zale Corporation*, 62 F.3d 746, 760 (5th Cir.1995); and *First Fidelity Bank v. McAteer*, 985 F.2d 114 (3d Cir.1993), which stated that:

While it is true that the bankruptcy court's confirmation of the plan binds the debtor and all creditors vis-à-vis the debtor, it does not follow that a discharge in bankruptcy alters the right of a creditor to collect from third parties. Section 524(e) ... assures creditors that the discharge of a debtor will not preclude them from collecting the full amount of a debt from co-debtors or other liable parties.... Thus, the receipt of payment under the plan does not operate to release non-debtor parties

from their obligations to the extent of non-payment.

*First Fidelity Bank,* 985 F.2d at 118.

Copelin's argument is without merit. *Zale* and *McAteer* are readily distinguishable from the present case in many ways. Perhaps the most obvious difference is that neither case involved a provision in a confirmed plan of reorganization which also released a non-debtor third party along with debtor from its liability to a creditor receiving distribution under the plan.

■ An order confirming a plan of reorganization constitutes a final judgment on the merits in a bankruptcy case and has *res judicata* effect. *See Eubanks v. FDIC,* 977 F.2d 166, 170 (5th Cir.1992); *Sanders Confectionery Products v. Heller Financial,* 973 F.2d 474, 480–84 (6th Cir.1992), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993); *Sure–Snap Corp. v. State Street Bank and Trust Company,* 948 F.2d 869, 872 (2nd Cir.1991).

The disputed provision in debtor's confirmed plan is *res judicata.* Copelin is barred from proceeding in another forum in contravention of the provision and to collect a money judgment from Innovo. As was indicated previously, Copelin neither objected to the proposed plan of reorganization nor appealed the confirmation order. Moreover, Copelin does not aver that he was not served with the proposed plan or the confirmation order. Presumably he had notice of these matters and, for whatever reasons, elected not to object or to appeal the confirmation order. He is bound by the provision and may not challenge it in this proceeding.

The United States Supreme Court long ago affirmed the finality of a confirmed plan of reorganization in *Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938). There was no objection to confirmation of a plan of reorganization which included a provision canceling a guaranty to pay a bond. Subsequent to confirmation of the plan, a creditor brought suit in another forum to recover on the guarantee. The Supreme Court held that the finality of the confirmation order precluded the creditor from so litigating its claim.

The United States Court of Appeals for the Third Circuit has applied the rationale of *Stoll* on more than one occasion. In *United States ex rel. I.R.S. v. Norton,* 717 F.2d 767 (3d Cir.1983), for instance, it held that IRS, which had not objected to debtor's proposed plan, could not retain an overpayment of debtor's taxes and apply it to the debt owed to it by debtor because, upon confirmation, IRS became bound by the plan's provisions. It also held in *In re Penn Central Transportation Co.,* 771 F.2d 762, 767 (3d Cir), *cert. denied,* 474 U.S. 1033, 106 S.Ct. 596, 88 L.Ed.2d 576 (1985), that a creditor who had notice of debtor's proposed plan and who failed to participate in the confirmation hearing was barred from subsequently litigating an antitrust claim.

Numerous courts have expressly applied this principle to situations in which the disputed plan provision unlawfully discharged the obligation of a non-debtor third party along with the debtor. For instance, the United States Supreme Court held nearly sixty years ago in *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940), that a creditor who had notice and opportunity to contest the validity of a plan of reorganization but failed to do so was nonetheless bound by the plan's provisions.

In *Chicot County,* a plan of reorganization was confirmed which provided for the discharge of certain debts of the debtor and for cancellation after one year of guarantees made upon such debts by third parties. As in the present case, a creditor with requisite notice of the plan and the confirmation order who neither objected to the plan nor appealed the confirmation order subsequently brought action in another forum against the third party guarantor. The Supreme Court expressly rejected the contention that the creditor should be allowed to proceed in another forum because the bankruptcy court had exceeded its authority in entering an order which effectively discharged the debt of a third party along with that of the debtor. It stated that:

... these bondholders, having the opportunity to raise the question of invalidity,

were not the less bound by the decree because they failed to raise it.

308 U.S. at 375, 60 S.Ct. at 319.

*Chicot County* retains its vitality despite its relatively ancient vintage. Since enactment of the Bankruptcy Code, several courts of appeals have held that a confirmed plan of reorganization containing a provision that violates the Bankruptcy Code that is not appealed is binding and enforceable notwithstanding its illegal provision. A creditor who had notice and who neither objects nor appeals is barred from subsequently challenging the legality of the provisions thereof. *See, e.g., Republic Supply Co. v. Shoaf,* 815 F.2d 1046, 1050 (5th Cir.1987); *Matter of Gregory,* 705 F.2d 1118, 1123 (9th Cir.1983).

▇▇ The United States Court of Appeals for the Third Circuit has applied this principle in a chapter 13 case. Unless there is fraud, a creditor who fails to object to a chapter 13 plan or to appeal its confirmation is barred from subsequently challenging the plan on the theory that it violated certain provisions of the Bankruptcy Code. *In re Szostek,* 886 F.2d 1405, 1408–10 (3d Cir. 1989). Although *Szostek* was a chapter 13 case, its holding applies with equal force to chapter 11 cases. With certain minor exceptions, the provision at 11 U.S.C. § 1327(a) concerning the effect of a discharge in a chapter 13 case is substantially the same as 11 U.S.C. § 1141(a). Both provide that the provisions of a confirmed plan bind the debtor and a creditor, whether or not the creditor has accepted the plan.

### F.) Is Debtor Barred From Bringing This Motion?

Copelin further maintains that *res judicata* and/or collateral estoppel prevent debtor from bringing this motion. According to Copelin, the previous determination of the bankruptcy court for the Middle District of Tennessee that we have no jurisdiction over the dispute between Copelin and Innovo prevents debtor from asking us to hear its motion. In addition, Copelin contends that any injunction prohibiting him from pursuing Innovo in another forum is precluded by the previous determination of the Chancery Court that Innovo is independently liable to Copelin. These contentions are without merit.

*Res judicata,* or claim preclusion, requires: (1) a final judgment on the merits; (2) involving the same parties; and (3) a subsequent suit based on the same cause of action. *Board of Trustees of Trucking Employees of North Jersey Welfare Fund v. Centra,* 983 F.2d 495, 504 (3d Cir.1992). Collateral estoppel, or issue preclusion, applies when: (1) the issue sought to be precluded is the same as was involved in a prior action; (2) it was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment. *In re Graham,* 973 F.2d 1089, 1092 (3d Cir. 1992).

▇▇ Copelin's contention that debtor is precluded by either *res judicata* or collateral estoppel from bringing this motion in light of the determination by the Bankruptcy Court for the Middle District of Tennessee that bankruptcy court jurisdiction was lacking to hear the dispute between Copelin and Innovo is unpersuasive.

To begin with, we are unable on the present state of the record to ascertain the procedural posture of the removal motion decided by that court. Simply put, we cannot determine the basis on which the matter came before the Bankruptcy Court for the Middle District of Tennessee, who was a party participant, and how it came to decide the removal petition. The parties have not presented us with this information and we can see no reason to litigate and investigate material facts on our own. What is clear, however, is that debtor was not a party to those proceedings.

Moreover, although we have great respect for the bankruptcy judge who heard and decided the petition for removal, we seriously question whether he had jurisdiction to hear the matter any more than we would if the underlying bankruptcy case were before the Middle District of Tennessee. Perhaps that is the point the bankruptcy judge was making when he stated that Copelin's action against Innovo had no significant impact on any bankruptcy case before him and, on that

basis, remanded the matter to the Chancery Court.

If this was his point—i.e., that the bankruptcy court for the Middle District of Tennessee had no jurisdiction to hear the petition—, it clearly is not *res judicata* with respect to whether **we** have jurisdiction to hear the matter now before us.

If however, the bankruptcy judge determined that the dispute between Copelin and Innovo had no conceivable effect on the bankruptcy case before us, we are left to wonder whether the order entered in that proceeding violated the automatic stay issued in this case and thus is voidable, *see In re Siciliano*, 13 F.3d 748 n. 2 (3d Cir.1994), and may be annulled. As we previously indicated, the dispute between Copelin and Innovo has a palpable effect on debtor's reorganization in this case.

The matter does not end there. Even if we set aside these difficulties, we are compelled to conclude that we are not bound or constrained by this determination, which was made on the basis of facts and circumstances as of December of 1993. The operative facts and circumstances upon which our jurisdiction to hear the present motion is predicated occurred subsequent to December of 1993. It arises out of the confirmation order of August 5, 1994, and the order of September 22, 1994, which made Copelin a Class 8 claimant. Copelin appealed neither of these orders.

 Copelin's contention that debtor is precluded by *res judicata* and/or collateral estoppel from seeking to enjoin him from proceeding further against Innovo in another forum in light of the determination of the Chancery Court that Innovo is independently liable to Copelin also is unpersuasive. The relief debtor requests does not seek to undo or attack this determination. The judgment against Innovo is unaffected and remains inviolate. The motion instead seeks to limit the way in which Copelin may seek to satisfy that obligation to the means provided for in debtor's confirmed plan. As we previously indicated, this provision of the confirmed plan of reorganization is binding upon Copelin.

## II. Debtor's Request For Sanctions.

 In addition to seeking to enforce the injunction prohibiting Copelin from pursuing Innovo in another forum, debtor also asks us to hold Copelin in contempt and to impose sanctions upon him. This request will be denied at this time.

Although Copelin has violated 11 U.S.C. § 524(a)(2) by continuing to pursue his action against Innovo in the Chancery Court, we will not hold him in contempt and impose sanctions *at this time*. We suspect that Copelin acted in the good faith, but mistaken belief that his actions against Innovo were permissible. *See In re Martin*, 157 B.R. 268 (Bankr.W.D.Va.1993). However, we will not be loathe to revisit the question and consider imposing sanctions should a final order be entered and thereafter Copelin persist in his efforts.

An appropriate order shall issue.

### ORDER OF COURT

AND NOW at Pittsburgh this 18th day of October, 1996, in accordance with the accompanying memorandum opinion, it hereby is **ORDERED, ADJUDGED,** and **DECREED** that respondent Wayne Copelin is **ENJOINED** from pursuing Innovo Group in any other forum to collect on the debt Innovo jointly owes along with debtor to Copelin.

IT IS FURTHER **ORDERED, ADJUDGED** that debtor's request to hold respondent Copelin in contempt and to impose sanctions is **DENIED** at this time.

IT IS SO **ORDERED.**