**In re SPIRCO, INC., f/k/a Nasco, Inc.**

**SPIRCO, INC. f/k/a Nasco, Inc., Now By Merger Effected By Approved and Confirmed Plan of Reorganization, Known As Innovo Group, Inc., Appellee,**

v.

**Wayne COPELIN, an individual, Appellant.**

**Bankruptcy No. 93–23033BM.**

**Civ.A. No. 96–342J.**

United States District Court,
W.D. Pennsylvania.

April 13, 1998.

---

Reed J. Davis, Davis Reilly, Pittsburgh, PA, for Wayne Copelin.

James R. Walsh, Spence, Custer, Saylor, Wolfe & Rose, Johnstown, PA, for Spirco, Inc., f/k/a Nasco, Inc.

Stephen I. Goldring, Office of United States Trustee, Pittsburgh, PA, for Stephen I. Goldring, Trustee.

### MEMORANDUM and ORDER

D. BROOKS SMITH, District Judge.

I. *Introduction*

This bankruptcy appeal by Wayne Copelin (Copelin) asserts that the bankruptcy court erred when it enjoined his efforts to collect a judgment from Innovo, Group, Inc. Copelin contends that his collection efforts are simply the efforts of a creditor to satisfy a judgment against a nondebtor. Innovo contends, however, that its merger with and into the debt-

or, Spirco, Inc., formerly known as Nasco, Inc., bars Copelin's effort to satisfy the judgment. Innovo relies upon the bankruptcy court's order confirming the reorganization plan which deemed the debtor to have merged with Innovo, and another order of that court which allegedly classified Copelin's judgment as a class 8 claim payable in Innovo's common stock.

For the reasons that follow, the bankruptcy court's order enjoining Copelin from engaging in any efforts to collect on the state court judgment against Innovo in any other forum will be reversed.

## II. *Facts and Procedural History*

In 1992, Nasco was a wholly owned subsidiary of Innovo with its principal place of business in Springfield, Tennessee. Copelin, then a citizen and resident of Texas, "desire[d] to accept employment with NASCO, Inc. as its president provided that certain agreements can be reached with Nasco and Innovo with regard to such employment...." R.—dkt. no. 501, exh. 1. Effective January 2, 1992, Copelin, Nasco and Innovo executed an employment agreement which hired Copelin as Nasco's President. The agreement provided for an initial four-year period of employment. In the event Copelin was terminated for any reason other than cause as defined in the agreement, Copelin was entitled under the agreement "to receive compensation, and Nasco shall be obligated to pay, severance compensation...." in the amount of $100,000. *Id.* ¶ 9.

The employment agreement also contained a covenant not to "compete with Innovo or its affiliates in the development, management, acquisition, ownership or operation of fund raising businesses in any state where Innovo or its affiliates owns, operates, manages or has an agreement acquire, develop, manage, own or operate such business...." *Id.* ¶ 6. Copelin agreed not to compete with Innovo or its affiliates during the term of his employment with Nasco and "for a period of twelve (12) months after the termination of his employment." *Id.* The employment agreement did not provide that Innovo's liability thereunder was contingent upon Nasco's failure to satisfy its obligations.

On May 14, 1992, Copelin was terminated, allegedly without cause. *Id.* exh. 2 ¶ 20. Copelin was not paid the $100,000 "severance compensation" as provided by the employment agreement. On July 2, 1992, Copelin filed suit against Nasco and Innovo in the Chancery Court of Robertson County, Tennessee alleging breach of contract, breach of covenant of good faith and fair dealing, infliction of emotional distress and misrepresentation. *Id.* The contract claim alleged that

> Defendant Innovo has also refused to perform under the fully executed employment compensation portion of the April documents. Innovo refuses to pay severance pay to Plaintiff or to honor any other provision within the signed Document....

R.—dkt. no. 502, exh. 2 ¶ 21. Copelin also alleged that Nasco and Innovo breached an oral agreement which would have provided him with certain stock compensation and options. At some point after the filing of this action, Nasco changed its name to Spirco, Inc.

On August 27, 1993, Spirco filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the Western District of Pennsylvania. Schedule F of the Chapter 11 petition designated Copelin as a creditor holding a disputed claim for $250,000 allegedly due under the January 2, 1992 employment agreement. R.—dkt. no. I. It also listed Copelin's address as "Wayne Copelin, c/o James Chesser, House of Gold Building, 1614 16th Avenue South, Nashville, TN 37212." *Id.* James Chesser was Copelin's attorney in the Tennessee state court action against Nasco and Innovo.

After Spirco filed for protection under Chapter 11, Copelin moved to dismiss without prejudice co-defendant Nasco, now Spirco, from the Tennessee state court action. The motion was granted on October 26, 1993, leaving Innovo as the sole defendant. R.—dkt. no. 501, exh. 7.

Innovo subsequently sought to remove the case from the Tennessee state court to the Bankruptcy Court for the Middle District of

Tennessee pursuant to 28 U.S.C. § 1452(a)[1] on the basis that it was related to Spirco's bankruptcy proceeding. Copelin objected. After argument, the bankruptcy court in Tennessee concluded in a December 30, 1993 order that the state action against only Innovo did not have a "significant impact" on Spirco's bankruptcy action proceeding in the Western District of Pennsylvania and that Innovo "has no relation to the Nasco bankruptcy case other than being a non-debtor co-defendant...." R.—dkt. no. 470, exh. D. Copelin's state action against Innovo was remanded to the Chancery Court.

Spirco filed its Chapter 11 Plan of Reorganization on March 31, 1994. An Amended Plan of Reorganization was subsequently filed on June 8, 1994. R.—dkt. no. 136. The amended plan identified the debtor as "Spirco, Inc., f/k/a Nasco, Inc." and noted that Innovo was the debtor's sole shareholder. The amended plan provided that:

> On the effective Date of the Plan, the debtor shall be deemed merged into its parent corporation, [Innovo], with [Innovo] being the surviving corporation. Therefore, on the Effective Date, the Debtor will cease to exist as a separate corporate entity and [Innovo] shall acquire all assets and powers belonging to the Debtor but shall incur liability of the Debtor only as provided for in this Plan.

*Id.* at 8. The amended plan also designated fourteen classifications of claims and interests. It further noted the amount of payment or the issuance of group common stock of Innovo to be tendered in satisfaction of the various claims. The amended plan provided that upon confirmation, the debtor would receive a discharge and the "discharge of the Debtor shall also effect a discharge of [Innovo with] respect to all claims and interests against Spirco, Inc., f/k/a Nasco, Inc." *Id.* at 23. The amended plan specified that "[a]t no time shall [Innovo] be deemed a debtor." *Id.*

A hearing on confirmation of the amended plan was scheduled for August 5, 1994. The last day for filing and serving written objections to the confirmation of the amended plan was July 29, 1994. Objections to the discharge provided for in the amended plan could be filed up to the date of the hearing. R.—dkt. no. 137. The scheduling order and the amended plan were served upon all creditors and parties in interest on June 15, 1994. Copelin's copy of the documents was forwarded to "Wayne Copelin, c/o James Chesser, Esquire, 1710 Grand Avenue, Nashville, Tennessee, 37212–2206." R.—dkt. no. 138. This was a new address for Copelin's counsel obtained from an envelope which had been returned by the Postal Service because the forwarding time for a new address had expired. R.—dkt. no. 120. Copelin objected to neither the amended plan of reorganization nor the discharge.

On August 5, 1994, the bankruptcy court confirmed the amended plan of reorganization which merged Spirco and Innovo. R.—dkt. no. 161. Spirco moved to classify the claims against it immediately after confirmation of the amended plan. R.—dkt. no. 201. Its motion averred that Copelin, among others, had initiated non-bankruptcy litigation against Innovo in an effort to establish liability for debtor's obligation by guarantee or otherwise. *Id.* ¶ 6. It also alleged that Innovo was "defending all such claims ... and denies any liability ... for obligations due and owing by the Debtor." *Id.* ¶ 7. It requested that the bankruptcy court classify the claims held by these creditors as class 8 claims with the ultimate determination to be made based on the outcome of the pending litigation. R.—dkt. no. 201. Under the confirmed amended plan, class 8 claimants would be paid in full "by the issuance of [Innovo] Common Stock...." and the receipt of the stock would·be "in full, complete and final satisfaction of their claims with no further recourse against the debtor or [Innovo]." *Id.* at 13. Copelin neither appealed the confirmation order nor objected to the Motion to Classify Claims.

Spirco's Motion to Classify Claims and the order scheduling a hearing for November 10,

---

1. Section 1452 of the Judicial Code provides for the removal of claims related to bankruptcy cases. 28 U.S.C. § 1452. Once removed, the case is "automatically" referred to the bankruptcy court pursuant to Bankruptcy Rule 9027(e)(1). *See* 1 *Collier on Bankruptcy* ¶ 3.07[1] at 3–79 (15th ed.1996).

1994 were mailed by the debtor's counsel to Copelin in care of James Chesser, his counsel in the state action, at his previous address of record. R.—dkt. no. 266. Apparently the notice to Copelin c/o Attorney Chesser was returned and the motion and the scheduling order were mailed again to Chesser's new address on October 10, 1994. R.—dkt. no. 476, exh. 20. Pursuant to the scheduling order, responses to the Motion to Classify Claims were to be filed by I November 3, 1994. A default order was signed by the bankruptcy court on November 8, 1994, granting the Motion to Classify Claims. R.—dkt. no. 321. The order provided:

> In the event that respondents, [including Copelin] ..., obtain a final Order of Court in the aforesaid litigation establishing Innovo Group, Inc.['s] liability for the Debtor[']s obligations, then such Respondent shall be deemed to have an Allowed Class 8 claim payable pursuant to the terms of the confirmed plan of Reorganization.

R.—dkt. no. 321, ¶ 3.

On April 24, 1995, in the Tennessee state court action, summary judgment was granted in favor of Copelin and against Innovo "as to the issue of severance benefits described in paragraph 9, of that Employment Agreement dated January 2, 1992 ... and that Copelin have and recover of the defendant, Innovo Group, Inc., the sum of $100,000.00." R.—dkt. no. 470, exh. C. The record does not contain any memorandum or opinion from which the state court's basis for its decision can be discerned. On May 1, 1995, Attorney Chesser received a certificate for 352,113 shares of Innovo stock in satisfaction of Copelin's judgment for $100,000. R.—dkt. no. 501, exh. 13. Attorney Chesser immediately returned the stock certificate and indicated his client's dissatisfaction with the payment in kind.

Slightly more than a year later, in June 1996, Attorney Chesser propounded post-judgment interrogatories upon Innovo. R.—dkt. no. 501, exh. 14. Innovo's counsel responded that he did "not think that Mr. Copelin can 'refuse' the stock. As I understand the order of the Bankruptcy Court for the Western District of Pennsylvania, Mr. Copelin is a class 8 creditor and gets stock only and has no separate recourse against Innovo...." *Id.*, exh. 15.

On July 19, 1996, the reorganized debtor, as merged with and into Innovo, moved to enforce the discharge injunction and the terms of the confirmed amended plan. Copelin contested the motion and retained counsel from Pittsburgh to file a written response and appear for the scheduled argument. The court took the motion under advisement after a hearing.

On October 18, 1996, the bankruptcy court granted the motion and enjoined Copelin from pursuing Innovo "in any other forum to collect on the debt Innovo jointly owes along with debtor to Copelin." R.—dkt. no. 483, *In re Spirco, Inc.*, 201 B.R. 744 (Bankr.W.D.Pa. 1996). The court determined that it had jurisdiction over the controversy and concluded that the dispute was a core proceeding which enabled it to issue a final judgment. It held that the debt owed to Copelin was discharged and that Copelin held a class 8 claim under the confirmed plan that was to be paid in Innovo stock. The court rejected Copelin's argument that he was not adequately served with the confirmed plan and that he was denied due process. It also held that the unappealed order confirming the amended plan constituted a final judgment which, pursuant to the doctrine of res judicata, barred Copelin from subsequently challenging the classification of the judgment against Innovo as a class 8 claim payable in Innovo stock despite any alleged violation of section 524(e) of the Bankruptcy Code.[2] The bankruptcy court further determined that the December 30, 1993 decision of the Bankruptcy Court for the Middle District of Tennessee that the state court action could not be removed did not bar the reorganized debtor from moving to enjoin Copelin's collection efforts.

Copelin filed a timely appeal from the October 18, 1996 order. He asserts that the bankruptcy court lacked personal jurisdiction since he was not personally served with any

---

2. Section 524(e) of the Bankruptcy Code provides that a discharge of a debtor's debt "does not affect the liability of any other entity on ... such debt." 11 U.S.C. § 524(e).

of the bankruptcy court documents affecting his claim. He further contends that the bankruptcy court erred in finding that his attorney of record in the state court proceeding was his agent for purposes of service of process. Copelin submits that the determination by the Bankruptcy Court for the Middle District of Tennessee remanding the state court action barred the Bankruptcy Court for the Western District of Pennsylvania from exercising subject matter jurisdiction over his claim. In addition, Copelin argues that the state court judgment, under the doctrine of res judicata, precludes the bankruptcy court from enjoining Copelin's efforts to collect Innovo's debt. The injunction prohibiting Copelin's efforts to collect on the state court judgment, according to Copelin, violates section 524(e) of the Bankruptcy Code and should be reversed.

### III. *Jurisdiction*

The nature of this court's jurisdiction is dependent upon whether this is a "core" or "non-core" proceeding. Under section 157 of the Judicial Code, "bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11 ... subject to review [by the district courts] under section 158 of this title." 28 U.S.C. § 157(b)(1). Section 158 provides that the "district courts of the United States shall have jurisdiction to hear appeals (1) from final judgment orders and decrees ... of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158.

If a matter is not a core proceeding under section 157(b), the bankruptcy judge may hear the issues and

> shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district court after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1).

The Bankruptcy Court for the Western District of Pennsylvania concluded that the issue of whether Copelin should be enjoined from any further efforts to collect the state court judgment was a core proceeding under section 157 of the Judicial Code. 201 B.R. at 749. The court reasoned that

> the issues raised by their very nature could arise only in the context of a bankruptcy case. Debtor requests enforcement of the injunction arising from plan confirmation against efforts by a pre-petition creditor to collect a debt owed to that creditor by debtor and a third party.

*Id.* The court acknowledged that "[i]f, as Copelin insists, this matter is not 'core,' the findings of fact and conclusions of law set forth in this memorandum opinion shall constitute recommendations subject to de novo review by the district court." *Id.* n. 2.

In the Third Circuit, the standard for determining whether a matter is a core proceeding requires a determination of whether it " 'invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.' " *Beard v. Braunstein,* 914 F.2d 434, 444 (3d Cir.1990) (quoting *Matter of Wood,* 825 F.2d 90, 96 (5th Cir.1987)). In applying this standard to the trustee's action to collect rent from a tenant of the debtor, the *Beard* court concluded that the matter was not a "core" proceeding. It reasoned that the trustee's action was a "garden variety contract claim and [was] not against the bankruptcy estate." *Id.*

The Third Circuit applied the above standard most recently in *In re Continental Airlines,* 125 F.3d 120 (3d Cir.1997), in determining whether the claims filed by two groups of pilots were properly before the bankruptcy court. The claims concerned the pilots' "alleged seniority integration rights stemming from a pending labor arbitration dispute" and presented the question of whether the claims could be "satisfied by monetary awards in lieu of specific performance...." *Id.* at 124. The pilots argued that their claims were non-core proceedings because they "arose wholly outside the bankruptcy context" as a result of a labor dispute. *Id.* at 130. The court concluded that the pilots had confused the "disposition of the

merits of the underlying LPP (labor) dispute with the treatment of their claims in bankruptcy." *Id.* The Third Circuit explained that core proceedings are those which involve a right created by federal bankruptcy laws, and because the claimants had filed claims against the debtor they had invoked bankruptcy law. As a result, the proceeding was a "core bankruptcy matter" and "the bankruptcy court had jurisdiction to determine whether the [pilots'] claims could be satisfied by a monetary award in lieu of specific performance." *Id.* at 131.

■ My application of the above standard to this case compels the conclusion that the issue of whether Copelin may execute on the state court judgment is a non-core matter that is related to a case arising under title 11. The lawsuit was initiated in state court by a creditor against the joint obligors Nasco, now Spirco, and its parent, Innovo. After the filing of the petition for bankruptcy, the creditor, Copelin, dropped his claim against the debtor, Spirco, and continued to pursue Innovo. Innovo, by the terms of the amended plan, is not the debtor. R.—dkt. no. 136, at 23. Hence, the efforts to execute on the judgment are not against the debtor, contrary to the conclusion of the bankruptcy court, and they do not seek to satisfy the state court judgment by obtaining any property of the bankruptcy estate. Because Copelin's efforts to collect on the judgment do not involve rights created by bankruptcy law, the issue before me is not of the type which arises only in the context of a bankruptcy case. 914 F.2d at 444.

It is true that the state court action is related to the bankruptcy proceeding because Spirco has merged into Innovo. But in the absence of a claim against the actual debtor or an impact upon the bankruptcy estate, the question of whether Copelin may execute on the state court judgment against a nondebtor is a non-core proceeding. The findings of fact and conclusions of law set forth in the bankruptcy court's memorandum opinion constitute recommendations subject to de novo review by this court. 28 U.S.C. § 157(c)(1); 201 B.R. at 749 n. 2.

## IV. Preclusive Effect of the Orders of the Bankruptcy Court for the Middle District of Tennessee and the Chancery Court of Robertson County, Tennessee

Copelin contends that the court below erred by failing to provide preclusive effect to the order of the Tennessee bankruptcy court which remanded Copelin's claims against Innovo to Tennessee state court. Copelin argues that the Tennessee bankruptcy court's determination in 1993 that the state court action was "unrelated" to the Spirco bankruptcy proceeding barred the Pennsylvania bankruptcy court from concluding that it had subject matter jurisdiction and that Copelin's judgment against Innovo was a class 8 claim payable in Innovo's common stock. In addition, Copelin asserts that the Tennessee judgment in favor of Copelin against Innovo should preclude the bankruptcy court in this district from both granting the motion to enforce the discharge injunction and enjoining further efforts by Copelin to execute on the judgment in another forum.

### A. Applicable Law

Copelin's arguments are peppered with the terms "res judicata" and "preclusive effect." Dkt. no. 6, at 21–23. The traditional term res judicata is frequently referred to as claim preclusion. It "requires: (1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action." *Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc. Pension Fund v. Centra,* 983 F.2d 495, 504 (3d Cir.1992). "Claim preclusion thus bars relitigation of any claim that could have been raised in the prior action even if it was not so raised." *In re Graham,* 973 F.2d 1089, 1093 (3d Cir.1992). The doctrine of claim preclusion "ensures the finality of decisions" because later claims based on the same cause of action are barred. *Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

The narrower principle of collateral estoppel, or issue preclusion as it is often called, requires that:

(1) the issue sought to be precluded [is] the same as that involved in the prior

action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination was essential to the prior judgment.

*In re Graham*, 973 F.2d 1089, 1097 (3d Cir. 1992). The final judgment concerning the issue is a judgment based on the merits. *Centra*, 983 F.2d at 505. In short, issue preclusion is inapplicable unless the "identical issue already has been fully litigated." *Id.*

■ The determination of whether there are identical causes of action or issues to which the doctrines of claim preclusion or issue preclusion may apply requires a factual inquiry. The inquiry begins with an assessment of whether the material facts are the same. *Facchiano Constr. Co., Inc. v. United States Dept. of Labor*, 987 F.2d 206, 212 (3d Cir.1993).

### B. Preclusive Effect of the Order Issued by the Bankruptcy Court for the Middle District of Tennessee

■ Copelin argues that the Bankruptcy Court for the Western District of Pennsylvania erred because it failed to accord preclusive effect to the order of the Tennessee bankruptcy court remanding the state claims. In Copelin's view, the remand order determined that Copelin's claim against Innovo was "unrelated" to the Spirco bankruptcy and therefore "the Bankruptcy Courts, whether the Middle District of Tennessee or the Western District of Pennsylvania, did not have the power to adjudicate Copelin's rights versus Innovo. . . ." Dkt. no. 6, at 22. In other words, Copelin asserts that the issue of jurisdiction has been litigated and the Bankruptcy Court for the Western District of Pennsylvania was precluded from making a determination that it had the authority to adjudicate this controversy.

Before I can find that the remand order from the Tennessee bankruptcy court bars the Bankruptcy Court for the Western District of Pennsylvania from enforcing the discharge injunction issued in Spirco's bankruptcy case, I must find that the identical issue has been litigated. This requires an identity between the facts upon which subject matter jurisdiction was based in December 1993, when the Tennessee bankruptcy court remanded Copelin's claim against Innovo to state court, and in October 1996, when the Pennsylvania bankruptcy court enjoined Copelin's efforts to execute on the judgment. The facts are not the same. Almost three years had passed and Spirco had merged with and into Innovo pursuant to the confirmed plan of reorganization. Because the question of whether subject matter jurisdiction existed in 1996 must be based on the circumstances existing at that time, the Tennessee bankruptcy court's determination of December 1993 cannot by itself preclude the Pennsylvania bankruptcy court from exercising jurisdiction. *See Labelle Processing Co. v. Swarrow*, 72 F.3d 308, 314 (3d Cir.1995) ("new facts (*i.e.* events occurring after the events giving rise to the earlier claim) may give rise to a new claim, which is not precluded by the earlier judgment") (citing *Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 328, 75 S.Ct. 865, 99 L.Ed. 1122 (1955)). Accordingly, the doctrine of issue preclusion, as it pertains to the Tennessee bankruptcy court's order finding Copelin's claim against Innovo "unrelated," did not bar the Pennsylvania bankruptcy court from determining whether Copelin's claim against Innovo was a class 8 claim.

### C. Preclusive Effect of the Tennessee State Court Judgment

Copelin also argues that the state court judgment that Innovo was "independently liable" should bar the bankruptcy court below from enjoining Copelin's efforts to execute on the judgment.[3]

Copelin's analysis starts with the amended plan which identified the debtor as "Spirco, Inc., f/k/a Nasco, Inc.," R.—dkt. no. 136 at 3, and provided for the merger of Spirco with its parent corporation, Innovo. Discharge of the debtor, Spirco, upon confirmation of the amended plan, "also effect[ed] a discharge of [Innovo with] respect to *all claims and inter-*

---

3. Copelin's appellate brief fails to clearly articulate the basis for his position, but Copelin's brief filed in the bankruptcy court sets forth his argument in a more coherent fashion. R.—dkt. no. 477 at 11–12.

ests against Spirco, Inc., f/k/a Nasco, Inc." *Id.* at 23 (emphasis added). The amended plan also designated as class 8 claims those allowed general unsecured claims "upon which [Innovo] is liable, by guaranty or otherwise[,]" and provided that payment of class 8 claims under the amended plan would be "in full, complete and final satisfaction of their claims with no further recourse against the Debtor or [Innovo]." Dkt. no. 136, at 7, 13. It further specified that Innovo was not a debtor in this proceeding. *Id.* at 23. After confirmation of the amended plan, the bankruptcy court granted the Motion to Classify Claims and the order limited the class 8 claims to those final orders issued "in the aforesaid litigation establishing Innovo Group, Inc.['s] *liability for Debtor[']s obligations ....*" R.—dkt. no. 321, ¶ 3 (emphasis added).

According to Copelin, it follows that the bankruptcy court orders are inapplicable to his judgment against Innovo because the judgment is based upon the "independent contractual obligations of [Innovo] and the individual liability of [Innovo] to Copelin." R.—dkt. no. 477 at 12. In other words, "the language of the Plan and Confirmation Order only refer to [Innovo] being released from liability of Nasco, the Debtor, and not [Innovo's] separate independent liability." *Id.* Copelin argues that the court below erred because the preclusive effect it accorded its own orders, confirming the plan of reorganization and classifying certain claims, was too broad and failed to distinguish between the debts and obligations of the debtor and those of the nondebtor, Innovo.

To determine whether the bankruptcy court erred, I must ascertain whether the Tennessee judgment falls within the scope of the bankruptcy court orders effecting discharge and classifying claims. This requires identifying the legal status of both Nasco and Innovo under the employment agreement.

It is axiomatic that there may be more than one obligor to a contract, and each obligor may be liable thereunder. *See Restatement (Second) of Contracts,* §§ 10, 289 (1981). Tennessee law, which governs the application of the employment agreement, recognizes this principle. It permits the initiation of a contract action against "all or any" of the parties to a written instrument and allows recovery against any of those who may be liable. 20 Tenn.Code Ann. §§ 1–108– 1–110.

The comment to § 10 of the *Restatement (Second) of Contracts* recognizes that

[a]s a matter of substantive law, an indefinite number of persons may contract with one another and there may be three or more individuals or groups, each with distinct rights and duties.... Where promises of the same performance are made by two or more promisors, there is necessarily a relation of suretyship among the promisors. Thus, if there are two promisors, either one is the principal obligor and the other his surety, or each is a principal obligor as to a part and a surety as to the balance.

*Restatement (Second) of Contracts* § 10, comment b. But the status as a surety because there is more than one obligor to a contract is distinguishable from the status of a guaranty. The *Restatement (Third) of Suretyship and Guaranty* explains that

[a] "surety" is typically jointly and severally liable with the principal obligor on an obligation to which they are *both bound,* while a "guarantor" typically contracts to fulfill an obligation upon the default of the principal obligor.

*Restatement (Third) of Suretyship and Guaranty,* § 1, comment c (1996) (emphasis added). Usually, the contractual obligation of a guarantor is evidenced by a separate written document. As the First Circuit observed in *FDIC v. Municipality of Ponce,* 904 F.2d 740, 744 (1st Cir.1990) (citation omitted), a bankruptcy appeal concerning municipal guaranties, "[a] loan guarantee or a contract of guarantee is a secondary obligation to a preexisting obligation in which the duty to pay arises when the primary obligation is not satisfied. As such, loan guarantees are contracts that are considered contingent liabilities." *See also Matter of Sandy Ridge Development Corp.,* 881 F.2d 1346 (5th Cir.1989) (third party guarantors who were not released by confirmation plan were obligated by written guaranty agreement); *Republic Supply Co. v. Shoaf,* 815

F.2d 1046 (5th Cir.1987) (third party guarantor signed guaranty of debtor's obligations).

Regardless of whether the contractual obligation of a third party is primary, arising out of that party's status as a joint obligor or coobligor, or contingent, based upon the party's status as a guarantor, that contractual obligation is usually unaffected by bankruptcy proceedings. Under the Bankruptcy Code

> [t]he discharge operates to make a debt unenforceable as a personal liability of the debtor for the debt in question, through the voiding of judgments and the injunction against acts to collect the debt. Subsection (e) of section 524 makes clear that ... the discharge in no way affects the liability of any other entity, or the property of any other entity, for the discharged debt.
>
> Hence, it has been repeatedly held that the discharge has no effect on the liability of a nondebtor codebtor or guarantor of the discharged debt.

4 *Collier on Bankruptcy* ¶ 524.05 (15th ed.1996) (citing 11 U.S.C. § 524(e)). The Third Circuit recognized this principle of bankruptcy law in *First Fidelity Bank v. McAteer*, 985 F.2d 114 (3d Cir.1993). The *McAteer* court reversed the district court's order which compelled a creditor bank to turn over to the estate insurance proceeds in excess of the amount due under the confirmed plan. In reversing, the Third Circuit rejected the premise that a discharge under the Code binds the creditor to the amount of the debt confirmed in the plan if there are other nondebtor entities liable for the debt. It reasoned:

> While it is true that the bankruptcy court's confirmation of the amended plan binds the debtor and all creditors vis-a-vis the debtor, it does not follow that a discharge in bankruptcy alters the right of a creditor to collect from third parties. Section 524(e) specifically limits the effect of a discharge. It provides that "... discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." This section assures creditors that the discharge of a debtor will not preclude them from collecting the full amount of a debt from co-debtors or other liable parties.

*Id.* at 118 (quoting 11 U.S.C. § 524(e)). As the Seventh Circuit explained in *Union Carbide Corp. v. Newboles*, 686 F.2d 593, 595 (7th Cir.1982), "the mechanics of administering the federal bankruptcy laws, no matter how suggestive, do not operate as a private contract to relieve co-debtors of the bankrupt of their liabilities." *See also Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 121 (4th Cir.1991) ("The law is clear that discharge of a debtor does not affect the liability on the debt of any co-debtors.").

■ Occasionally, however, a confirmed plan releases a codebtor or guarantor despite § 524(e)'s prohibition. In that event, if the confirmed plan is unappealed and becomes final, the release of the codebtor or guarantor is entitled to preclusive effect. *See Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938) (preclusive effect of a final order which reorganized a debtor and released a guarantor barred creditor from subsequently litigating claim); *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940) (Court refused to disturb a district court's order confirming the reorganization of a debtor in bankruptcy which had not been appealed even though it canceled certain bonds one year after the confirmation of the plan); *In re Szostek*, 886 F.2d 1405 (3d Cir. 1989) (unappealed confirmation order precludes creditor from challenging plan's failure to provide for the present value of its claim).

■ Here, the bankruptcy court appeared to recognize that the confirmed plan probably violated § 524(e), but relied on *Stoll* and *Chicot County* in according preclusive effect to its own order, effectively releasing both Innovo and the debtor from liability to Copelin. The bankruptcy judge recognized that Innovo was a nondebtor coobligor, but reasoned that Copelin's failure to appeal or object was fatal because the confirmation order releasing Innovo had become final.

The flaw in this analysis is that the confirmed plan and the order classifying claims

do not, by their terms, effect a general discharge of Innovo. The discharge of Innovo was limited to those "claims and interests *against Spirco* ... [,]" and class 8 claims included those "upon which [Innovo] is liable, by guaranty or otherwise...." R.—dkt. no. 136, at 7, 23 (emphasis added). The boundaries of the reorganization plan are also reflected in the order granting the motion to classify claims which specifies that class 8 claims are those which pursuant to a final order establish Innovo's "liability for the *debtor[']s obligations* ...." R.—dkt. no. 321. ¶ 3 (emphasis added).

The state court judgment, however, does not hold Innovo liable for any of these reasons. The judgment order does not find that the severance benefits due under the employment agreement were the "debtor[']s obligation," which would permit a conclusion that the severance benefits are thereby a liability of Innovo as the surviving entity of the merger. Neither does the judgment order conclude that the lawsuit was a claim against Spirco, as Spirco was no longer a party to the lawsuit. Nor is there any evidence that Innovo was a guarantor, contrary to the bankruptcy court's view. *See* 201 B.R. at 744 ("debt owed by debtor and guaranteed by Innovo"). The only contract at issue is the employment agreement, and it is devoid of language imposing an obligation upon Innovo in the event of a default by Nasco.[4]

I conclude that the preclusive effect accorded the orders confirming the plan and classifying the claims by the bankruptcy court was too broad. That court failed to recognize the joint obligations that arose when Nasco and Innovo jointly executed the employment agreement, and it conflated the limited discharge effected by its order with a general release of Innovo's independent liability for Innovo's own contractual obligations.

I conclude that the state court judgment imposing liability upon Innovo for its contractual obligations is not encompassed by the orders of the bankruptcy court confirming the plan and classifying the claims. Because the issue is not identical, the doctrine of issue preclusion cannot bar Copelin's efforts to execute on the judgment order against Innovo. The state court judgment against Innovo for $100,000 must be recognized by the bankruptcy court, and the order enjoining Copelin from engaging in any effort to collect on the judgement must be reversed.

Because the bankruptcy proceeding was separate and distinct from the state court action which concerned Innovo's independent liability under the employment agreement, I need not address whether Copelin was served with certain motions and orders which related to the debtor's obligation.

An appropriate order follows.

### ORDER

AND NOW, this 13th day of April, 1998, consistent with the foregoing Memorandum, it is hereby

ORDERED AND DIRECTED that the October 18, 1996, order of the Bankruptcy court enjoining Copelin from pursuing Innovo "in any other forum to collect on the debt Innovo jointly owes along with debtor to Copelin" is REVERSED and the debtor's Motion to Enforce the Discharge Injunction and the Terms of the Confirmed Amended Plan is DENIED.

---

**4.** The bankruptcy court seemingly recognized this when it characterized Copelin's claim as one "Innovo jointly owes along with debtor...." 201 B.R. at 754.