

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-1-1999

# Copelin v. Spirco Inc

Precedential or Non-Precedential:

Docket 98-3309

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Copelin v. Spirco Inc" (1999). *1999 Decisions.* Paper 187.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/187

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 1, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-3309

WAYNE COPELIN

v.

SPIRCO, INC., f/k/a Nasco Inc.

STEPHEN I. GOLDRING, Trustee

      INNOVO GROUP, INC.,*
      Appellant
      (Pursuant to Rule 12(a), F.R.A.P.)

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

(D.C. No. 96-cv-00342J)
District Judge: Honorable D. Brooks Smith

ARGUED MARCH 9, 1999

BEFORE: MANSMANN, SCIRICA, and NYGAARD,
Circuit Judges.

(Filed: July 1, 1999)

      James R. Walsh (Argued)
      Spence, Custer, Saylor, Wolfe
       & Rose
      400 United States National Bank
       Building
      P.O. Box 280
      Johnstown, PA 15907
       Attorney for Appellant

        Thomas E. Reilly (Argued)
        Davis & Reilly
        437 Grant Street
        1124 Frick Building
        Pittsburgh, PA 15219
         Attorney for Appellee

OPINION OF THE COURT

NYGAARD, Circuit Judge.

Innovo Group, Inc., the parent corporation of debtor Spirco, Inc., f/k/a Nasco, Inc.,[1] appeals a District Court Order disallowing Innovo from using Innovo stock to satisfy a Tennessee state court judgment against it. The District Court concluded that the judgment does not fall within the terms of Spirco's approved Bankruptcy Plan of Reorganization, and that Wayne Copelin, who holds the judgment against Innovo, is merely seeking to collect on a judgment he holds against a non-debtor. We agree and will affirm.

I.

Spirco and Innovo hired Wayne Copelin to serve as Spirco's president. Copelin, Spirco and Innovo executed a written employment agreement that included a clause entitling Copelin to compensation in the amount of $100,000 if his employment was terminated for any reason other than for cause. Appellants' App. at 99. The Employment Agreement did not make Innovo's liability contingent upon Spirco's failure to pay. Approximately five months later, Spirco terminated Copelin without cause, but

_____

1. Spirco and Innovo merged under the terms of Spirco's Plan of Reorganization filed with the Bankruptcy Court, with Innovo as the surviving corporation. During the course of relevant litigations, Nasco changed its name to Spirco. As such, the documents in the record refer to both Spirco and Nasco to reflect the name of the company at the various stages of the Tennessee State Court and bankruptcy litigation. However, for ease of understanding, we will only use the company name Spirco to refer to both Spirco and Nasco.

2

did not pay the $100,000 compensation due under the contract.

Copelin sued Spirco and Innovo jointly and severally in Tennessee state court alleging breach of contract, misrepresentation, breach of covenant of good faith and fair dealing, and promissory estoppel. Spirco filed a voluntary petition for relief with the Bankruptcy Court for the Western District of Pennsylvania under Chapter 11 of the Bankruptcy Code, 11 U.S.C. S 101 et seq., which identified Copelin as a creditor holding a disputed claim for $250,000 under the Employment Agreement. Copelin then filed in state court a notice of intention to non-suit Spirco without prejudice. The state court dismissed Spirco, but Innovo remained a party. Innovo then sought to remove the state court action to the Bankruptcy Court for the United States District Court for the Middle District of Tennessee under 28 U.S.C. S 1452(a) claiming that the matter was related to Spirco's bankruptcy proceeding then pending in the Bankruptcy Court for the Western District of Pennsylvania. Copelin objected and requested that the case be remanded to the Tennessee State Chancery Court.

The Tennessee Bankruptcy Court conducted a hearing to determine the proper forum and concluded that: (1) Copelin's suit had no significant impact on the Spirco bankruptcy action; (2) Innovo's only relation to the Spirco bankruptcy case was as a non-debtor co-defendant in the Copelin action; and (3) no objective of the bankruptcy code would be furthered by removing the case to the Bankruptcy Court for the Middle District of Tennessee. Innovo did not appeal, and the case remained in state court.

Spirco filed an Amended Plan of Reorganization with the Bankruptcy Court in the Western District of Pennsylvania. A copy of the scheduling order and Amended Plan was forwarded to Wayne Copelin c/o his attorney in the Tennessee state court action.

The Plan stated that Spirco would receive a discharge and the "discharge of the Debtor shall also effect a discharge of [Innovo with] respect to all claims against Spirco, Inc." Appellee's App. at 23. Further, the Plan commanded that "at no time shall [Innovo] be deemed a

3

debtor." Id. The Bankruptcy Court for the Western District
of Pennsylvania confirmed the Amended Plan which stated
in relevant part:

> Article II–Specifications of Claims and Interests
>
> Pursuant to Sections 1122 and 1123(a)(1) of the
> Bankruptcy Code, the following classes of Claims are
> designated:
>
> (H) Class 8 – Class 8 consists of holders of Allowed
> General Unsecured Claims upon which [Innovo] is
> liable, by guaranty or otherwise, as established by (a)
> the entry of a final Order upon motion filed by[Spirco]
> or Class 8 Claimant, or (b) written acknowledgment of
> [Innov]. Appellants' App. at 65.
>
> Article III–Plan of Reorganization
>
> On the Effective Date of the Plan, [Spirco] shall be
> deemed merged into its parent corporation, [Innovo],
> with [Innovo] being the surviving corporation.
> Therefore, on the Effective Date, [Spirco] will cease to
> exist as a separate corporate entity and [Innovo] shall
> incur liability of [Spirco] only as provided for in this
> Plan. Appellants' App. at 66.
>
> Article X – Effect of Confirmation; Issuance of Group
> Common Stock; Vesting of Property; Discharge
>
> . . . At no time shall [Innovo] be deemed a debtor.
> [Innovo] shall incur no obligations as a result of such
> merger except as specifically provided in the Plan.
>
> D. Upon the Effective Date, [Spirco] shall receive a
> discharge pursuant to Section 1141 of the Bankruptcy
> Code. The discharge of [Spirco] shall also effect a
> discharge of [Innovo] will [sic] respect to all claims and
> interest against Spirco, Inc.

Appellee's App. at 23.

While confirmation of the Reorganization Plan was
pending, Innovo filed an Amended Answer to Copelin's state
court complaint claiming that Spirco was an indispensable
party to the suit and that the suit should be dismissed
until Spirco could be properly joined. The state court did

4

not find that Spirco was an indispensable party and Spirco did not join the action. Appellants' App. at 129.

Spirco filed a Motion to Classify Claims in the Bankruptcy Court for the Western District of Pennsylvania alleging that Copelin filed non-bankruptcy litigation against Innovo to establish Innovo's liability for Spirco's obligation by guarantee or otherwise and that Innovo "denies any responsibility to [Copelin] for obligations due and owing by the Debtor [Spirco]." Spirco requested that this claim be classified as a Class 8 claim if Copelin successfully established Innovo's liability for Debtor's obligations. Appellants' App. at 77. The Bankruptcy Court for the Western District of Pennsylvania ordered that in the event Copelin obtained a final order in state court establishing Innovo liable for Spirco's obligations, then Copelin would be deemed to have an Allowed Class 8 claim. Under the terms of the confirmed Amended Plan of Reorganization, Innovo could satisfy any Allowed Class 8 claim with payment of Innovo stock.

The Tennessee State Chancery Court granted summary judgment in favor of Copelin against Innovo for $100,000 plus costs. The Order stated in pertinent part:

> ORDERED, ADJUDGED and DECREED that Summary Judgment is hereby granted in favor of the Plaintiff, Wayne Copelin, against the Defendant, Innovo Group, Inc., as to the issue of severance benefits described in Paragraph 9, of that Employment Agreement, dated January 2, 1992, and identified as Exhibit B, to this Complaint filed in this cause, and that the Plaintiff, Wayne Copelin, have and recover of the Defendant, Innovo Group, Inc., the sum of $100,000.

Appellants' App. at 149.

Copelin was given a certificate for 352,113 shares of Innovo stock to satisfy the judgment. Copelin's attorney returned the stock stating that the judgment against Innovo was "for a sum certain of money, not stock." Spirco, as merged with and into Innovo, then filed a Motion for Enforcement of Discharge Injunction and Terms of Confirmed Plan, Together with Request for Finding of Contempt and Imposition of Sanctions with the Bankruptcy

Court for the Western District of Pennsylvania. Spirco contended that under the terms of the Amended Plan, Copelin's judgment against Innovo in state court could be satisfied with Innovo stock. Copelin contested the motion.

The Bankruptcy Court for the Western District of Pennsylvania enjoined Copelin from "pursuing Innovo Group in any other forum to collect on the debt Innovo jointly owes along with [Spirco]." The court found that: (1) Innovo was a guarantor or otherwise liable to Copelin based on Spirco's obligation to Copelin; (2) the dispute was a core proceeding, and therefore the bankruptcy court had jurisdiction to enter a final judgment; (3) Copelin had a Class 8 claim payable in Innovo stock; (4) the debt owed to Copelin "by Debtor" was discharged; (5) Copelin was barred from challenging the classification of the judgment against Innovo as a Class 8 claim; and (6) the denial of removal by the Bankruptcy Court for the Middle District of Tennessee regarding Copelin's state court action s against Spirco and Innovo did not bar the reorganized debtor from enjoining Copelin's collection efforts. See In re Spirco, Inc., 201 B.R. 744 (Bankr. W.D. Pa. 1996).

Copelin appealed the Bankruptcy Court's decision to the United States District Court for the Western District of Pennsylvania. The District Court concluded that: (1) whether Copelin could execute on the state court judgment was a non-core matter related to a case arising under title 11; (2) Copelin's state court lawsuit was against Innovo, not Spirco; (3) Copelin's collection efforts did not involve rights created by bankruptcy law; (4) the discharge of Innovo under the Amended Plan was limited to "those claims and interest against Spirco" and that Class 8 claims included only those "upon which [Innovo] is liable, by guaranty or otherwise"; (5) there was no evidence that Innovo was a guarantor of Spirco; and (6) the preclusive effect accorded the orders confirming the Amended Plan and classifying the claims by the bankruptcy court was too broad. See In re Spirco, Inc., 221 B.R. 361 (W.D. Pa. 1998).

The District Court ordered the Bankruptcy Court to recognize the state court judgment against Innovo for $100,000 plus costs.

6

II.

A. Jurisdiction

28 U.S.C. S 157 sets forth the jurisdiction of the bankruptcy courts. It states in pertinent part:

> (b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
>
> (2) Core proceedings include, but are not limited to–
>
> (A) matters concerning the administration of the estate;
>
> . . .
>
> (I) determinations as to the dischargability of particular debts;
>
> (J) objections to discharges;
>
> (K) determinations of the validity, extent, or priority of liens;
>
> (L) confirmation of plans
>
> . . .
>
> (c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions after reviewing de novo those matters to which any party has timely and specifically objected.

In sum, as the Bankruptcy Court for the Western District of Pennsylvania correctly observed, its jurisdiction extends over four types of matters: (1) title 11 cases, (2) proceedings that arise under title 11, (3) proceedings that arise in a case

under title 11, and (4) proceedings related to a case under title 11. See Spirco, 201 B.R. at 748; 28 U.S.C. SS 1334(a), (b). We conclude that the Bankruptcy Court had jurisdiction because this matter is a "proceeding related to a case under title 11."

A proceeding is related to a case under title 11 if it "could conceivably have any effect on the estate being administered in bankruptcy" such that " `it is possible that [the] proceeding may impact on the debtor's rights, liabilities, options, or freedom of action or the handling and administration of the bankrupt estate.' " Halper v. Halper, 164 F.3d 830, 837 (3d Cir. 1999) (quoting In re Guild & Gallery Plus, Inc., 72 F.3d 1171, 1181 (3d Cir. 1996) (other citations and quotations omitted)); see also United States Trustee v. Gryphon at the Stone Mansion, Inc., 166 F.3d 552, 556 (3d Cir. 1999) (noting that test to determine if matter is "related to" a bankruptcy is whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy). As we reaffirmed in Halper, the key word "is `conceivable.' Certainty, or even likelihood [of effect on the estate being administered in bankruptcy] is not a requirement." 164 F.3d at 837 (quoting In re Guild, 72 F.3d at 1181) (other quotations omitted). Thus, jurisdiction is a threshold issue determined by speculating whether the ultimate outcome of the litigation could conceivably affect the bankrupt estate. Here, the Bankruptcy Court had jurisdiction to hear Spirco's, as merged into Innovo, motion to enforce the terms of the Bankruptcy Plan of Reorganization because resolution of that motion may arguably have had an impact on Spirco's bankruptcy. That the underlying issue is enforcement of a state court judgment is irrelevant to our analysis of the Bankruptcy Court's jurisdiction.

B. Standard of Review

The scope of our review critically depends on the nature of the Bankruptcy Court's and the District Court's jurisdiction. In a core case, a bankruptcy court can enter a final judgment over which a District Court can exercise only appellate review. See 28 U.S.C. SS 157(b)(1), 158(a). During a non-core proceeding, however, a bankruptcy court can

8

only issue proposed findings and conclusions; the district court alone can enter final judgment, and exercise de novo review of the bankruptcy court's proposals. See 28 U.S.C. S 157(c)(1). In either case, we have appellate jurisdiction over the district court's final decision. See 28 U.S.C. SS 158(d), 1291. The nature of the bankruptcy and the district court's jurisdictions, however, determines whether we are reviewing the final decision of the bankruptcy court or the district court, i.e., to whose fact-finding we owe clear-error deference. See Halper, 164 F.3d at 836 ("[A] proceeding's core or non-core nature is crucial in bankruptcy cases because it defines both the extent of the Bankruptcy Court's jurisdiction, and the standard by which the District Court reviews its factual findings.").

A core proceeding, " `invokes a substantive right provided by title 11 or . . . by its nature, could arise only in the context of a bankruptcy case.' " Id. (quoting In re Guild, 72 F.3d at 1178). When reviewing a core proceeding, we accept the Bankruptcy Court's findings of fact unless clearly erroneous. See id. at 835.

In contrast, a non-core proceeding belongs to "the broader universe of all proceedings that are not core proceedings but are nevertheless `related to' a bankruptcy case." Id. at 837. Thus, a "non-core" matter may include a proceeding that is not against the debtor or the debtor's property. See id. When reviewing a non-core proceeding, we treat the district court as the trial court, accepting its findings of fact unless clearly erroneous. See  28 U.S.C. S 157. Of course, conclusions of law are reviewed de novo in both core and non-core proceedings. See id.

The Bankruptcy Court for the Western District of Pennsylvania opined that Spirco's motion to enforce the terms of the Reorganized Plan and enjoin enforcement of the state court judgment against Innovo was a core proceeding because "[s]uch a request would arise only in the context of a bankruptcy case wherein a plan of reorganization was confirmed and debtor had received a discharge." Spirco, 201 B.R. at 748. Innovo claims that " `[b]ut for' the filing of the Chapter 11 case by `Spirco' and the terms of its Plan, `Copelin' would have been free to

pursue collection from `Spirco' or `Innovo' or both, until his claim was satisfied." Appellants' Br. at 26-27. We disagree.

At issue here is whether Copelin has the right to collect his judgment from Innovo, a non-debtor who became involved in a bankruptcy court proceeding through the confirmation of an Amended Plan. This, we conclude, is a non-core proceeding. See Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S. Ct. 2858 (1982) (criticizing the exercise of jurisdiction by a non-Article III judge over a state law claim that was connected to a bankruptcy solely because the plaintiff filed a petition for bankruptcy). Indeed, it would be inconsistent with Northern Pipeline to require Copelin to have his rights determined by a non-Article III court simply because Innovo invoked the protection of the bankruptcy court through a bankruptcy court procedure. It is clear from the record that Copelin sued and won a state court judgment against Innovo, not Spirco. Innovo remained a party to the action after Copelin filed a notice of non-suit against Spirco because Innovo was originally a party to the Employment Agreement.2 Additionally, by the very terms of the

_____

2. The Tennessee state court concluded that Spirco was not an indispensable party. Tennessee's Rules of Civil Procedure state:

> Rule 19. Joinder of Persons Needed for Just Adjudication.
>
> 19.01 Persons to Be Joined if Feasible. A person subject to the jurisdiction of the court shall be joined as a party if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person properly should join as a plaintiff but refuses to do so, he or she may be made a defendant, or in a proper case, an involuntary plaintiff. This rule shall be construed to allow joint tort-feasors and obligors on obligations that are joint and several to be sued either

jointly or severally.

Tenn. R. Civ. P. 19.01.

10

Reorganization Plan, Innovo is not the debtor. Copelin's judgment resulted from a "garden variety contract claim [against Innovo,] and is not against the bankrupt estate." Beard v. Braunstein, 914 F.2d 434, 444 (3d Cir. 1990) (holding that RICO and state law alter ego and common law fraud claims brought against shareholders, officers, directors and managing agents of a corporation thatfiled bankruptcy were not barred by the bankruptcy court's order confirming the Reorganization Plan, in part, because "the bankruptcy court would not have had jurisdiction to hear [the plaintiff 's] claims against the defendants"). Copelin's judgment did not result from a claim filed against a debtor that invoked bankruptcy law. Thus, the District Court properly concluded,

> the efforts to execute on the judgment are not against the debtor . . . [because] they do not seek to satisfy the state court judgment by obtaining any property of the bankruptcy estate. . . . Copelin's efforts to collect on the judgment do not involve rights created by bankruptcy law, [therefore], the issue before[this court] is not of the type which arises only in the context of a bankruptcy case.

Spirco, 221 B.R. at 367 (citing Beard, 914 F.2d at 444).

We reject Innovo's assertions urging us to hold that a non-debtor party who is independently liable on a state court judgment may subvert that judgment and invoke core treatment from a bankruptcy court simply by assuming obligations of a debtor who is also obligated to the same creditor. Both the Bankruptcy Court and Innovo characterize the issue as "debtor['s] request[ ][of] enforcement of the injunction arising from plan confirmation against efforts by a pre-petition creditor to collect a debt owed to that creditor by debtor and a third party." Spirco, 201 B.R. at 749. However, the debt is owed only by Innovo, the third party. The fact that Spirco merged into Innovo with Innovo as the surviving corporation does not does not change our analysis.

The proceeding was non-core, therefore, the Bankruptcy Court's jurisdiction arose under 28 U.S.C. S 157(c)(1), and we exercise jurisdiction under 28 U.S.C. S 1291. As such,

11

the Bankruptcy Court's findings and conclusions are mere recommendations entitled to no deference, and the District Court's findings of fact are subject to review for clear error.

## C. Is Copelin's Claim Against Innovo a Class 8 Claim Under the Terms of the Plan and the Bankruptcy Court Order?

We also reject Innovo's assertion that the language and terms of the Reorganization Plan included Copelin's state court judgment against Innovo. First, the terms of the Reorganization Plan and the Bankruptcy Court Order dated November 18, 1994, expressly limits the discharge of Innovo's liability. See, e.g., Art. II(H) ("Class 8 consists of holders of Allowed General Unsecured Claims upon which [Innovo] is liable, by guaranty or otherwise, as established by (a) the entry of a Final Order upon motion filed by Debtor or Class 8 Claimant, or (b) written acknowledgment of [Innovo]."); Art. III ("Innovo shall acquire all assets and powers belonging to the Debtor but shall incur liability of [Spirco] only as provided for in this Plan."); Art. X(C) ("At no time shall [Innovo] be deemed a debtor. [Innovo] shall incur no obligations as a result of such merger except as specifically provided in the Plan."); Art. X(D)("Upon the Effective Date, [Spirco] shall receive a discharge pursuant to Section 1141 of the Bankruptcy Code. The discharge of [Spirco] shall also effect a discharge of[Innovo with] respect to all claims and interests against Spirco, Inc.").

Importantly, although the Bankruptcy Court classified Copelin's claim as a Class 8 claim, the express terms of the Order do not encompass Innovo's independent liability to Copelin. The Order of the Court dated November 8, 1994, states in relevant part:

> 1. Each of the named Respondents herein have initiated Litigation against Innovo Group, Inc. in an effort to establish Innovo Group, Inc. liability[sic] for [Spirco's] obligations to such Respondents;
>
> 2. Each of the named Respondents herein shall be and are deemed to be holders of Disputed Class 8 claims against [Spirco] as provided in the confirmed Plan of Reorganization;

12

        3. In the event that Respondents, or any one of them, obtain a final Order of Court in the aforesaid Litigation establishing Innovo group, Inc. liability [sic] for the Debtors obligations, then such Respondent shall be deemed to have an Allowed Class 8 claim payable pursuant to the terms of the confirmed Plan of Reorganization.

Appellants' App. at 193–94. The plain language in the Reorganization Plan and the Order classifying claims reveals that judgments entered against Innovo individually, without reference to Spirco's liability, do not fall within any of these provisions.

Second, the Tennessee state judgment does not indicate that Innovo's liability was contingent on Spirco's liability. The Bankruptcy Court's faulty analysis is evident in its characterization of Spirco's motion to enforce the terms of the Reorganization Plan. The Bankruptcy Court premised its decision on the statement that "debtor Spirco, Inc. has moved for an order enforcing the provision of its confirmed plan of reorganization which prohibits respondent Wayne Copelin from continuing his efforts in another forum to collect from Innovo Group, Inc. on a pre-petition debt owed by debtor and guaranteed by Innovo." Spirco, 201 B.R. at 746. The Tennessee state court, however, found that Innovo was independently liable, not liable as a guarantor.3

Because Spirco's Reorganization Plan and the classification of claims by their terms do not apply to Copelin's state court judgment against Innovo, Stoll v. Gottlieb, 305 U.S. 165, 59 S. Ct. 83 (1938), Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 60 S. Ct. 317 (1940), and In re Szostek, 886 F.2d 1405, 1408–10 (3d Cir. 1989), are not controlling. As explained, the Reorganization Plan expressly limits the discharge of Innovo's obligations to those "claims and interest against Spirco" "upon which [Innovo] is liable by guaranty or otherwise, as established by (a) the entry of afinal Order upon motion filed by Debtor or Class 8 Claimant, or (b) written acknowledgment of [Innovo]." Appellants' App. at

_____

3. Innovo concedes that the Tennessee state court found Innovo separately liable to Copelin.

13

65, Article II(H); Appellee's App. at 23, Article X(D). There is no indication that Innovo's liability on the Tennessee state court judgment arises from either of these two situations. Moreover, the Reorganization Plan makes it clear that despite the merger of Spirco and Innovo, Innovo is not the debtor; therefore, Innovo's protections under Spirco's Reorganization Plan are limited. Appellee's App. at 23, Article X(C); Article X(D).

Finally, reading the plan to allow a general discharge of Innovo is incorrect. Generally, independent obligations of a parent corporation are not discharged by its subsidiary's bankruptcy absent a general discharge provision. To the contrary, the general rule of First Fidelity Bank v. McAteer, 985 F.2d 114 (3d Cir. 1993), controls. In McAteer, we said:

> While it is true that the bankruptcy court's confirmation of the amended plan binds the debtor and all creditors vis-a-vis the debtor, it does not follow that a discharge in bankruptcy alters the right of the creditor to collect from third parties. Section 524(e) specifically limits the effect of a discharge. It provides that ". . . discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." This section assures creditors that the discharge of a debtor will not preclude them from collecting the full amount of a debt from co-debtors or other liable parties.

Id. at 118 (quoting 11 U.S.C. S 524(e)) (emphasis added).

In sum, the District Court did not err by determining that Copelin's claim against Innovo does not qualify as a Class 8 claim. There is no evidence that Innovo's liability on the Employment Agreement is contingent on Spirco's liability. Further, the release provision is limited in scope. When read in context with other provisions of the plan, it is clear that this discharge provision is limited to those claims and obligations upon which Innovo's liability results from "claims and interest against Spirco" or Innovo's status as "guaranty or otherwise, as established by (a) the entry of a final Order upon motion filed by Debtor or Class 8 Claimant, or (b) written acknowledgment of [Innovo]." Appellants' App. at 65; Appellee's App. at 23. We hold that

14

the state court judgment rendered against Innovo does not fall within the plain terms of Spirco's Plan of Reorganization. We will affirm the District Court's denial of Spirco's motion to enjoin Copelin's enforcement of the state court judgment.4

III.

In conclusion, Copelin holds a judgment against Innovo for breach of contract, breach of the covenants of good faith and fair dealing, and promissory estoppel. The District Court correctly decided that Copelin's judgment against Innovo does not fall within the terms of either the Reorganization Plan or the Bankruptcy Court's order that any final order establishing Innovo's liability for Spirco's obligations be classified as an Allowed Class 8 claim. Therefore, we affirm.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit
_____

4. Because we affirm the District Court, we need not address Copelin's other arguments.