

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-20-2004

# In Re: Allegheny

Precedential or Non-Precedential: Precedential

Docket No. 03-2085

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"In Re: Allegheny " (2004). *2004 Decisions.* Paper 276.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/276

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 03-2085, 03-2193

_____

IN RE: ALLEGHENY HEALTH,
EDUCATION
AND RESEARCH FOUNDATION;
ALLEGHENY UNIVERSITY OF
THE HEALTH SCIENCES;
ALLEGHENY UNIVERSITY
MEDICAL PRACTICES;
ALLEGHENY HOSPITALS;
CENTENNIAL AND ALLEGHENY
UNIVERSITY HOSPITALS-EAST

TENET HEALTHSYSTEM
PHILADELPHIA, INC.,

Appellant in No. 03-2193

v.

NATIONAL UNION OF HOSPITAL
AND HEALTH
CARE EMPLOYEES, AFSCME, AFL-
CIO,
DISTRICT 1199C,

Appellant in No. 03-2085

WILLIAM J. SHARFFENBERGER,

Trustee

On Appeal from the United States
District Court
for the Western District of Pennsylvania
(D.C. Civil No. 01-cv-01714)
District Judge: Honorable Donald E.
Ziegler

_____

Argued: March 22, 2004

Before: FUENTES, SMITH and JOHN
R. GIBSON,* Circuit Judges.

(Filed: September 20, 2004)

For Appellee/Cross Appellant:
Beverly W. Manne (ARGUED)
Tucker Arensberg
1500 One PPG Place
Pittsburgh, PA 15222

Raymond W. Thomas
Richard S. Zuniga
Hill, Farrer & Burrill
300 South Grand Avenue
37th Floor
Los Angeles, CA 90071

For Appellant/Cross Appellee:
Gail Lopez-Henriquez (ARGUED)
Freedman & Lorry
400 Market Street
9th Floor
Philadelphia, PA 19106

_____

*The Honorable John R. Gibson,
United States Court of Appeals for the
Eighth Circuit, sitting by designation.

1

_____

OPINION OF THE COURT
_____

JOHN R. GIBSON, <u>Circuit Judge</u>:

District 1199C of the National Union of Hospital and Health Care Employees and Tenet HealthSystem Philadelphia, Inc., each appeal from the district court's[1] order vacating an arbitration order in part and dismissing Tenet's suit to vacate the other part of the arbitration order. We will affirm in part and remand in part for entry of judgment in favor of District 1199C.

This case arises at the intersection of the bankruptcy and labor laws. The suit was filed as an adversary proceeding in the Chapter 11 bankruptcy of Allegheny Health, Education and Research Foundation and related entities,[2] which owned a number of hospitals in Philadelphia. Employees at four of the hospitals were represented by District 1199C and were covered by collective bargaining agreements. Tenet purchased substantially all the assets of these hospitals in a transaction approved by the bankruptcy court[3] under 11 U.S.C. §§ 105, 363 and 365 (2000). Tenet and District 1199C now contest whether Tenet is bound to pay sick leave benefits under the collective bargaining agreements between District 1199C and Allegheny.

After Allegheny filed bankruptcy, Tenet and Allegheny entered an agreement for Tenet to purchase Allegheny's assets and, later, an amendment to the agreement, with a closing date of November 10, 1998.[4] Under the asset purchase agreement, Tenet assumed some liabilities of Allegheny and disclaimed other liabilities, which remained the obligation of the bankruptcy estate. In particular, the agreement contained a list of "Assumed Contracts" in Schedule 2.01(e), which Allegheny, as debtor-in-possession, would assume and assign to Tenet. The collective bargaining agreements between Allegheny and District 1199C were listed on Schedule 2.01(e).[5] The asset purchase

_____

[1]The Honorable Donald E. Ziegler, United States District Judge for the Western District of Pennsylvania.

[2]The related entities are Allegheny University of the Health Sciences, Allegheny University Medical Practices, Allegheny Hospitals, Centennial, and Allegheny University Hospitals-East. We will refer to the debtors collectively as "Allegheny."

[3]The Honorable M. Bruce McCullough, Bankruptcy Judge for the Western District of Pennsylvania.

[4]The sale actually closed on November 11, 1998.

[5]We have searched the record in vain for a copy of the elusive Schedule 2.01(e). The asset purchase agreement is reproduced in the record with a note stating that schedules are attached to the

agreement defined "Assumed Liabilities" as including (inter alia) "all obligations of

---

amended agreement, but they are not. The bankruptcy court stated that District 1199C's collective bargaining agreements were on the schedule: "Unfortunately for Tenet, the Court concludes that the [collective bargaining agreements] are 'Assumed Contracts' within the meaning of the [asset purchase agreement], which conclusion is dictated because (a) 'Assumed Contracts' is defined in the [asset purchase agreement] as 'the Contracts described in Schedule 2.01(e) as the same may be amended by Buyer [(i.e., Tenet)] as permitted by the Court,' and (b) the [collective bargaining agreements] are described as Assumed Contracts in the initial Schedule 2.01(e), the Amended Schedule 2.01(e), and the Second Amended Schedule 2.01(e)." Tenet HealthSystem Philadelphia, Inc. v. Nat'l Union of Hosp. & Health Care Employees, AFSCME, AFL-CIO, District 1199C (In re Allegheny Health, Educ. and Research Found.), 265 B.R. 88, 102 (Bankr. E.D. Pa. 2001) (citations omitted). Tenet does not dispute this statement of a key fact. Moreover, District 1199C attached to its reply brief Tenet's proposed schedule of executory contracts to be assigned to Tenet as part of the asset purchase agreement, which includes several collective bargaining agreements. Therefore, we can only assume that the District 1199C collective bargaining agreements are indeed found on the relevant Schedule 2.01(e).

Sellers arising on or after the Closing Date with respect to any period commencing on the Closing Date under the Assumed Contracts." Conversely, the asset purchase agreement contained a list of "Excluded Liabilities" for which Tenet would not become liable; one item excluded was "liabilities or obligations arising from any Assumed Contract before the Closing Date or resulting from any breach or default prior to the Closing Date of any Assumed Contracts or other Assumed Liabilities . . . ." The asset purchase agreement also contained a section labeled, "5.03, Employee Matters," in which Tenet agreed to bargain with unions currently representing Allegheny's employees but with the following proviso: "Employees employed under written Contracts will not be offered employment pursuant to this Section, but employment of such employees shall be governed by the terms of the Assumed Contracts, if any, relating to such employees."

Allegheny moved in the bankruptcy court for an order approving the asset purchase agreement under 11 U.S.C. §§ 105, 363, and 365. District 1199C received notice of the motion and the hearing on the motion. In two sale orders dated October 1 and 30, 1998, the bankruptcy court approved the asset purchase and assignment of the assumed contracts to Tenet and ordered the non-debtor parties to the assumed contracts to assert any claims for existing defaults against Allegheny in the bankruptcy or else to be barred from asserting the claims. The sale closed on November 11, 1998.

3

After the sale closed, Tenet and District 1199C took opposing positions about what the terms of employment would be for District 1199C members. Tenet offered to credit the members with 40 hours of accrued sick leave, which it later conditioned upon District 1199C agreeing to eliminate leave pay prospectively for the first day of any absence. District 1199C rejected the prospective elimination of pay for the first day of an absence, and Tenet responded by refusing to credit members with any accrued sick leave.

District 1199C filed a grievance accusing Tenet of refusing to abide by the terms of the collective bargaining agreements. The grievance proceeded to arbitration on the following questions: "Did the Employer violate the collective bargaining agreements by refusing to pay employees sick leave starting with the first day of absence and by refusing to pay employees accumulated sick leave? If so, what shall be the remedy?" Tenet maintained the position that the grievance was not arbitrable, but it participated in the hearing, preserving its objection for judicial review. The arbitrator observed that the issue of arbitrability was reserved for judicial determination and that his powers were limited to interpreting the collective bargaining agreements signed by Allegheny and District 1199C. He concluded that those agreements provided for accrued sick leave and payment for the first day of leave, as requested by District 1199C. Accordingly, he ordered Tenet to pay sick leave that had accumulated before November 11, 1998, and to pay employees sick leave for the first day of each absence.

Tenet notified Allegheny's trustee that it considered Allegheny liable to indemnify Tenet under the asset purchase agreement for the cost of the arbitration award. The asset purchase agreement provided that Allegheny would indemnify Tenet against any loss due to excluded liabilities, and Tenet contended that the liability for accrued sick leave was an excluded liability.

Tenet then brought this suit in the bankruptcy court. Count I sought vacatur of the arbitration award on the grounds that the dispute was not arbitrable and that it fell within the exclusive jurisdiction of the bankruptcy court. For convenience's sake, we will refer to the part of Count I concerning the accrued sick leave obligation as Count IA and the part concerning the prospective sick leave obligation as Count IB.[6] Count II sought indemnity from the Allegheny bankruptcy

_____

[6]The prayer for relief in the First Amended Complaint does not explicitly ask for relief from the award of prospective sick leave under the collective bargaining agreements. However, Tenet characterizes its suit as seeking vacatur of the arbitrator's prospective sick leave ruling, the bankruptcy court so considered it, and District 1199C does not object. There is a general prayer for relief which could be broad enough to include relief from the award of prospective relief, and we will so treat it.

4

estate for $4,500,000, which Tenet estimated as the cost to it of complying with the arbitrator's award. District 1199C counterclaimed, seeking enforcement of the arbitration award, both as to accrued and prospective sick leave obligations.

The bankruptcy court held that the terms of the asset purchase agreement were binding on District 1199C by collateral estoppel because "the Union, although it received notice of the [asset purchase agreement] and the hearings to approve the same, failed to object at such hearings to the Court's approval of the [asset purchase agreement] and, in particular, to the Court's approval of Tenet's incomplete assumption [of the collective bargaining agreements]." Tenet HealthSystem Philadelphia, Inc. v. Nat'l Union of Hosp. & Health Care Employees, AFSCME, AFL-CIO, District 1199C (In re Allegheny Health, Educ. and Research Found.), 265 B.R. 88, 112 (Bankr. E.D. Pa. 2001). The bankruptcy court construed the asset purchase agreement to include a partial assignment of the District 1199C collective bargaining agreements to Tenet. District 1199C argued that the asset purchase agreement could not have contemplated a partial assignment, because a partial assignment would not have been legal. The court reasoned that under the common law of assignment of contracts, the assignor and assignee can divide among themselves responsibility for performing the duties to the obligee. The bankruptcy court held that Allegheny could assign the benefits of the collective bargaining agreements to Tenet without

assigning all of the obligations, in which case Allegheny as debtor-in-possession would remain liable for the obligations. Id. at 113-14.

Notwithstanding the common law, the bankruptcy court acknowledged that 11 U.S.C. § 1113 governs rejection of collective bargaining agreements by a debtor-in-possession. The bankruptcy court considered the partial assignment of the collective bargaining agreements in connection with the sale of Allegheny's assets to be a possible violation of 11 U.S.C. § 1113(f) by Allegheny (not by Tenet). 265 B.R. at 116-17. However, the bankruptcy court held that this possible violation of § 1113(f) would not render Tenet liable for the accrued sick leave because District 1199C did not raise a § 1113 objection when the court was deciding whether to approve the asset purchase agreement, and even if District 1199C had objected, the appropriate relief would not have been to impose such liability on Tenet. Id. at 117.

The bankruptcy court found that under the asset purchase agreement, Tenet assumed the collective bargaining agreements, but only the obligations that arose after November 10, 1998. Id. at 105. Therefore, Tenet was not liable for the accrued sick leave obligation, but it was liable for the prospective sick leave obligation. Id. at 118. Accordingly, the bankruptcy court granted Tenet summary judgment as to Count IA, vacating the arbitration award of accrued sick leave benefits. Id. at 94. As to Count IB, which sought vacatur of the award of prospective

5

leave benefits, the bankruptcy court held that Tenet had assumed liability under the asset purchase agreement for the prospective sick leave obligation. This being so, the bankruptcy court reasoned that Tenet's indemnity claim was unfounded and should not result in recovery from the bankruptcy estate. The court reasoned that if the claim could not affect the bankruptcy estate, the bankruptcy court therefore lacked subject matter jurisdiction over Count IB. Id. at 118-19. On this reasoning, the court dismissed Count IB. Id.

The resolution of Count II, the indemnity count, followed from the resolution of Count I. As to the part of Count II seeking indemnity for the accrued leave obligation, the bankruptcy court dismissed Tenet's claim without prejudice as moot, because the court's holding on Count IA eradicated Tenet's claim for indemnification. Id. at 127. As to the part of Count II seeking indemnification for the prospective leave obligation, the bankruptcy court reasoned that since Tenet assumed the prospective obligation, the bankruptcy estate was not liable for it; accordingly, the bankruptcy court entered summary judgment for the trustee and against Tenet on that part of Count II. Id. at 128.

The district court affirmed the bankruptcy court. Both District 1199C and Tenet appeal.

I.

Appellate jurisdiction over this appeal is founded on 28 U.S.C. §§ 158(d) and 1291 (2000). Because this case was decided on summary judgment, it involves only questions of law, which we review de novo. American Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999).

As a threshold matter, District 1199C contends that the bankruptcy court lacked core subject matter jurisdiction, but appears to concede that the bankruptcy court had non-core, or "related to," jurisdiction.[7] A bankruptcy court may hear

---

[7]Whether or not District 1199C concedes the existence of "related to" jurisdiction, such jurisdiction exists because Tenet names the trustee as defendant in Count II, seeking contractual indemnification for District 1199C's claim against it. See Copelin v. Spirco, Inc., 182 F.3d 174, 179 (3d Cir. 1999) ("[J]urisdiction is a threshold issue determined by speculating whether the ultimate outcome of the litigation could conceivably affect the bankrupt estate."). A defendant's assertion of a claim for indemnity against a debtor does not always result in "related to" jurisdiction over the claim against the defendant. See Pacor, Inc. v. Higgins, 743 F.2d 984, 994-96 (3d Cir. 1984) (no "related to" jurisdiction for products liability claim in which defendant had impleaded debtor that manufactured product), overruled on another ground, Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 129 (1995); In re Federal-Mogul Global, Inc., 300 F.3d 368, 379-84 (3d Cir. 2002), cert. denied, 537 U.S. 1148 (2003). However, in this case the outcome of the

6

both core and non-core matters, see 28 U.S.C. §§ 157(b) and (c), and "[w]hether a particular proceeding is core represents a question wholly separate from that of subject-matter jurisdiction." In re

Marcus Hook Dev. Park, Inc., 943 F.2d 261, 266 (3d Cir. 1991). The significance of the distinction between core and non-core jurisdiction is that in core proceedings the bankruptcy court can enter a final judgment, whereas in non-core proceedings the bankruptcy court's power is limited to submitting proposed findings of fact and conclusions of law to the district court for entry of a final order after de novo review (unless the parties consent to adjudication by the bankruptcy judge). Id.; 28 U.S.C. §§ 157(b) and (c). Because the district court considered this case under both the standard appropriate for appeals of core-matter decisions and the de novo standard, in the alternative, District 1199C's argument about the core/non-core distinction has little practical import in this case. However, in order to clarify procedure on remand, we hold that the bankruptcy court correctly determined that

_____

suit between District 1199C and Tenet could have an immediate effect on the bankruptcy estate since Tenet's indemnity claim, if it is meritorious at all, has already matured. The asset purchase agreement requires Allegheny to defend Tenet or else pay for its defense of third-party claims covered by the indemnity agreement, and Tenet has already made demand on Allegheny to defend it against District 1199C's claim on the arbitration award.

the suit was a core proceeding because it required the court to interpret and give effect to its previous sale orders. See In re Marcus Hook, 943 F.2d at 267 (motion to enforce bankruptcy sale order is core proceeding).

However, we must conclude that the bankruptcy court erred in determining that it had no jurisdiction over Tenet's Count IB to vacate the arbitration award concerning the prospective sick leave obligation or over District 1199C's counterclaim to enforce that part of the arbitration award. The bankruptcy court reasoned:

> [I]f, and to the extent that, the Sales Orders and the [asset purchase agreement] are construed such that Tenet . . . assumed liability for the Sick Leave Obligations, then (a) such liability is not that of . . . the Trustee and the instant debtor's bankruptcy estate, (b) Tenet cannot recover on a claim for indemnification against the instant debtor's bankruptcy estate, and (c) the debtor's bankruptcy estate thus cannot conceivably be impacted by the outcome of litigation regarding whether the Arbitration Award should be set aside or enforced.

265 B.R. at 97. In other words, the court

7

reasoned that if the court decided to interpret the asset purchase agreement to place responsibility on Tenet for the prospective leave obligation, then Allegheny could not be liable to indemnify Tenet and the claim for prospective leave would not have any potential to affect Allegheny's estate. If the claim could have no effect on the estate, there should be no bankruptcy jurisdiction. Accordingly, when the court decided that Tenet had assumed liability for the prospective sick leave obligation, it held:

> [B]ecause the Sales Orders do not operate to preclude the Union from pursuing Tenet for payment of the Prospective Sick Leave Obligation, the Court lacks even noncore subject matter jurisdiction over Tenet's 1st Count and the Union's counterclaim to the extent that the same seek to set aside or enforce the Arbitration Award as it pertains to the Prospective Sick Leave Obligation.

265 B.R. at 118. Thus, the bankruptcy court's holding that it lacked jurisdiction was based on its resolution of the merits of the claim.

The existence of subject matter jurisdiction is determined before, not after, adjudication of the merits and depends on the nature, not the validity, of the plaintiff's claim. See Steel Co. v. Cit. for a Better Env't, 523 U.S. 83, 88-102 (1998). Because the bankruptcy court correctly determined that Tenet's suit to vacate the arbitration award and District 1199C's counterclaim to enforce it required the court to interpret and enforce the sale orders, 265 B.R. at 96, it was error then to hold that jurisdiction disappeared once the court construed the asset purchase agreement and sale orders to bind Tenet to the collective bargaining agreement. The bankruptcy court had subject matter jurisdiction over the entire suit and counterclaim.

II.

On the merits, District 1199C argues that Tenet is bound by the collective bargaining agreements in their entirety because Tenet assumed them in the asset purchase agreement with Allegheny, notwithstanding Tenet's attempt to limit its liabilities under that agreement. District 1199C argues that this obligation follows from our opinion in American Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76 (3d Cir. 1997), which District 1199C interprets to mean that a party that assumes any part of a contract's obligations automatically assumes all of them.

This is a misreading of American Flint Glass. American Flint Glass held that in order to effect a novation by operation of law under 11 U.S.C. § 365(k), a bankruptcy debtor-in-possession must assign the old contract cum onere, with all rights and obligations intact. Id. at 80. A partial assignment does not suffice to

8

effect a novation, releasing the original obligor from its duties under the contract. The result in American Flint Glass of the employer-debtor's attempt to make a partial assignment was that the debtor remained liable for the entire collective bargaining agreement. The decision in American Flint Glass bound the debtor only; it did not hold that the partial-assignee became obliged to perform duties it never agreed to undertake and which it expressly disavowed in the asset purchase agreement. Therefore, American Flint Glass might be authority for holding Allegheny liable on the collective bargaining agreements, but it does not provide authority for holding Tenet liable for the parts of the collective bargaining agreements that it declined to assume.[8]

District 1199C argues that unless

---

[8] American Flint Glass also held that when a debtor-in-possession makes a partial assignment of a collective bargaining agreement in connection with a sale of substantially all its assets, this amounts to an attempt to reject the collective bargaining agreement, and compliance with 11 U.S.C. § 1113 is required. Under § 1113, before a debtor-in-possession can reject a labor agreement, there must be negotiations and a hearing. §§ 1113(b), (c), and (d). In American Flint Glass there was no attempt to comply with § 1113. The remedy was that the debtor remained liable under the collective bargaining agreement, not that the assignee became liable. 197 F.3d at 82.

we interpret American Flint Glass to bind Tenet to terms of the collective bargaining agreement that it was not willing to assume, we will have "disenfranchise[d]" the Union by allowing the successor employer to discard burdensome terms without bargaining. We do nothing of the kind. To the extent that Tenet has been able to enjoy the benefits of the collective bargaining agreements without having to pay for sick leave that accrued under them, District 1199C has itself to blame. The division of responsibility between Tenet and Allegheny was ordained by the asset purchase agreement. At the time the bankruptcy court was considering the motion to approve the asset purchase agreement, District 1199C neither objected to the proposed agreement nor affirmatively endorsed it. Deciding whether District 1199C became bound by the terms of the asset purchase agreement under such circumstances would require us to consider difficult questions of bankruptcy and labor law. However this inquiry has been rendered unnecessary because in the briefs before us, District 1199C has conceded that the asset purchase agreement binds it. The bankruptcy court held, "[T]he Sales Orders, which approved the [asset purchase agreement] . . . are final orders, which fact, when coupled with the notice to the Union as just described, means that, by virtue of collateral estoppel . . . the Union can no longer press, and the Court is not now free to entertain, collateral attacks upon said orders . . . ." 265 B.R. at 112. District 1199C does not contest this holding that it is bound by the terms of the

asset purchase agreement, as enshrined in the sale orders:

> [T]he Union is not objecting to the approval of the [asset purchase agreement] or seeking to make a collateral attack upon it. Rather, the Union is arguing that the [asset purchase agreement] did not, and should not be construed as if it did, establish an incomplete assumption of the collective bargaining agreements.

Thus, District 1199C does not dispute that it is bound by the asset purchase agreement; instead, it only argues about how to interpret the asset purchase agreement. We will therefore assume that the asset purchase agreement is binding on both Tenet and District 1199C.

### III.

We now turn to the proper interpretation of the asset purchase agreement. Tenet says the asset purchase agreement excludes liability for the accrued sick leave and allows Tenet to set the initial terms of employment and to bargain with District 1199C for a new collective bargaining agreement. District 1199C says the asset purchase agreement does not exclude liability for accrued sick leave and requires Tenet to abide by the collective bargaining agreements with regard to prospective sick leave obligations.

### A.

The asset purchase agreement excludes from Tenet's obligations any liability for "liabilities or obligations arising from any Assumed Contract before the Closing Date." Conversely, Tenet assumed Allegheny's obligations "arising on or after the Closing Date with respect to any period commencing on the Closing Date under the Assumed Contracts." The collective bargaining agreements provide for the accrual of leave upon completion of specified periods of employment; the leave accumulates and is then available for employees to use in case of illness or injury. Most of the collective bargaining agreements provide that the employees who retire will be paid for some accumulated sick leave.

District 1199C contends that the asset purchase agreement's exclusion of "liabilities or obligations arising from any Assumed Contract before the Closing Date" does not exclude accrued sick leave claims because the employees did not have a claim for the accrued sick leave until they became sick or retired and tried to use the leave. Our review of the collective bargaining agreements shows that once the employees had accumulated sick leave, they had a right to the leave, albeit a right contingent on future illness, injury or retirement. A contingent obligation is, nonetheless, an obligation. See Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.), 744 F.2d 332, 336 & n.7 (3d Cir. 1984). The accrued sick leave obligation was an obligation arising before the closing date.

10

District 1199C also argues that Allegheny was not in default on the accrued sick leave and was not liable to pay such amounts as "cure" under 11 U.S.C. § 365(b). This may be true, but we are determining Tenet and Allegheny's contractual division of liabilities in the asset purchase agreement, not ascertaining what their statutory liabilities would be in the absence of such a contract. We therefore interpret the asset purchase agreement to exclude from Tenet's liabilities the obligation to pay for sick leave that accrued before the closing date.

## B.

Tenet claims that the asset purchase agreement does not purport to bind Tenet to the terms of the District 1199C collective bargaining agreements, but leaves Tenet free to set initial terms of employment and to bargain for new collective bargaining agreements. In the definition of "assumed liabilities," Tenet agreed to be responsible for "all obligations of Sellers arising on or after the Closing Date with respect to any period commencing on the Closing Date under the Assumed Contracts." The District 1199C collective bargaining agreements were included in the list of assumed contracts. See note 5, supra. Inclusion of the District 1199C collective bargaining agreements as "assumed contracts" would seem to be conclusive evidence that Tenet indeed assumed them (with respect to obligations that accrued after the closing date, that is), not that it reserved the right to set them aside and bargain for new terms.

Tenet argues that this obvious conclusion is rendered problematic by language in section 5.03 of the asset purchase agreement, in which Tenet agreed that it would bargain with unions representing employees of Allegheny. Section 5.03 provided:

> Subject to the foregoing and subject to the right of [Tenet] to set the initial terms and conditions of employment of union employees, Buyer will recognize all existing unions at the Hospitals and will bargain in good faith the subsequent terms and conditions of employment for employees in the bargaining units represented by those unions, to the extent required by law. Employees employed under written Contracts will not be offered employment pursuant to this Section, but employment of such employees shall be governed by the terms of the Assumed Contracts, if any, relating to such employees.

Thus, Tenet agreed to bargain with union employees generally, but employees covered by a written contract were taken out of the class of employees with whom Tenet agreed to bargain. This exemption makes sense, since employees who already had a contract would presumably have nothing left to bargain over. This

11

exemption would seem to apply to the District 1199C employees, who were covered by an "Assumed Contract," and who therefore had no need to bargain for a new contract.

However, Tenet argues that the exemption for "written Contracts" should not apply to District 1199C's collective bargaining agreements. Tenet contends that "all employees in bargaining units represented by unions at [Allegheny] were covered by written collective bargaining agreements." Tenet argues that if "written collective bargaining agreements" were synonymous with "written Contracts" under section 5.03, then there would only be one class of employees, those covered by written contracts. It contends that under such a reading, the part of section 5.03 agreeing to bargain would not apply to anybody, which is an absurd interpretation of the asset purchase agreement.

Tenet's assertion that all union employees were covered by written collective bargaining agreements is unsupported by citation to the record. But even if all unions had contracts with Allegheny, Tenet does not allege that it assumed all those collective bargaining agreements. Since a successor employer is not automatically bound by its predecessor's collective bargaining agreements, see NLRB v. Burns Int'l Sec. Servs., Inc., 406 U.S. 272, 281-91 (1972); Ameristeel Corp. v. Int'l Bhd. of Teamsters, 267 F.3d 264, 273-77 (3d Cir. 2001), unions that had a collective bargaining agreement with Allegheny would not necessarily have had a "written Contract" with Tenet. Those unions would still have to bargain with Tenet. The District 1199C collective bargaining agreements, however, were expressly assumed by Tenet. They were "written Contracts" to which Tenet became a party. Thus, it still makes sense for section 5.03 to exempt District 1199C from the need to bargain even if all the unions did have collective bargaining agreements with Allegheny.

In sum, we reject Tenet's argument that the asset purchase agreement did not bind it to performance of District 1199C's collective bargaining agreements prospectively, beginning on the closing date.

IV.

In accordance with the foregoing opinion, we will affirm the judgment of the district court entering summary judgment for Tenet on its claim to vacate the arbitrator's award of accrued sick leave benefits and entering judgment against District 1199C on its suit to enforce that part of the award. We will reverse the dismissal of District 1199C's claim to enforce the arbitration award with regard to the prospective sick leave obligation and the dismissal of Tenet's suit to vacate that part of the arbitration award. We will remand with instructions to the bankruptcy court to enter judgment in favor of District 1199C on its claim to enforce the award of prospective benefits and against Tenet on its claim to vacate the award of prospective benefits.

12